**(90 South. 429)**

**No. 23461.**

**LOWE v. MORGAN'S LOUISIANA & T. R. & S. S. CO.**

(April 4, 1921. On Rehearing, Jan. 2, 1922.)

*(Syllabus by Editorial Staff.)*

1. **Pleading ☞261—Amended answer held not inconsistent with issues raised by prior pleadings.**

In an action by an employee against a third person for personal injuries, wherein defendant denied negligence, and averred contributory negligence, an amended answer, averring that plaintiff was an employee of a master governed by the Workmen's Compensation Act, and had elected to claim compensation thereunder, was not inconsistent with the issues raised by the prior pleadings, and was properly allowed to be filed, being in the nature of a peremptory exception or plea in bar, tending to defeat the demand.

2. **Master and servant ☞354 — Injured employee claiming compensation loses no right of action against third person.**

All that section 7 of the Workmen's Compensation Act intended to do was to give the employer a statutory subrogation pro tanto to the rights of an employee injured through the negligence of a third party, and employee claiming compensation from the employer did not forfeit his right of action against the third person, such section only giving the employer an interest in the subject-matter of the litigation, which is essential to the maintenance of an action under Code Prac. art. 15, although such third party had the right by appropriate exception to require that the employer be made a party, but the total liability of the third person was to be determined by Civ. Code, art. 2315.

3. **Damages ☞132(9)—$11,000 held excessive for loss of foot.**

$11,000 was excessive for loss of foot, and should be reduced to $7,390, where plaintiff was also to receive $2,710 under the Workmen's Compensation Act.

On Rehearing.

4. **Railroads ☞282(5)—Negligence of engineer held not shown.**

In an action against a railroad for injuries to an employee of a third person injured while working near the track by a large metal pan or box hurled against him when struck by defendant's engine, evidence *held* insufficient to support a finding of negligence on the part of defendant's engineer.

O'Niell and Dawkins, JJ., dissenting as to disposition on rehearing.

Appeal from Civil District Court, Parish of Orleans; E. K. Skinner, Judge.

Action by George H. Lowe against Morgan's Louisiana & Texas Railroad & Steamship Company for personal injuries. Judgment for plaintiff, and defendant appeals, and plaintiff asks for increase of verdict. Judgment set aside, and action dismissed.

Denegre, Leovy & Chaffe and Harry McCall, all of New Orleans, for appellant.

H. W. Robinson, of New Orleans, for appellee.

DAWKINS, J. Plaintiff's suit is for personal injuries alleged to have been received through the fault and carelessness of defendant and its employees. He alleges that he was employed as a carpenter by the Southern Cotton Oil Company, and at the time of the injury was engaged in helping to construct the frame-work around and in a scale pit of said Cotton Oil Company, on its premises in the town of Gretna, La.; that the tracks of the defendant company extend into the yard and plant of his said employer; and that defendant's locomotive, in passing on a track near where petitioner was at work, carelessly struck a large metal pan or box which was lying on or near said track, hurled it against and upon petitioner, crushing and injuring his right leg to such extent as to render it of no further use, and which will ultimately necessitate its amputation; that the said injury has wholly incapacitated petitioner for pursuing his chosen trade; and prays damages in the sum of $25,000.

Defendant admits the injury, but denies the charges of negligence imputed to it, or that the injuries were of the character alleged, avers contributory negligence on the part of plaintiff, and prays that his demands be rejected.

Subsequently defendant filed an amended answer, in which it was averred that plaintiff was an employee of the Southern Cotton Oil Company, governed by the provisions of the Workmen's Compensation Act (Act No. 20 of 1914), and under said statute had the choice of claiming compensation thereunder and waiving his claim for damages ex delicto against respondent, or of refusing such compensation and pursuing his action against respondent; that he had chosen the former course, had demanded and accepted compensation under said act, and was thereby precluded from asserting the demand made in this case.

Plaintiff resisted the allowance of the supplemental answer on the ground that it was inconsistent with and changed the issues raised by the prior pleadings. This objection was overruled by the lower court, the issue raised by the amendment was submitted first and preliminarily to the jury, which decided in plaintiff's favor, holding that there had been no voluntary election of remedies, and the case then went to trial on the main issues.

There was a verdict in favor of plaintiff for $11,000, and from a judgment pursuant thereto, defendant prosecutes this appeal. Plaintiff has answered, praying that the sum awarded be increased to the amount originally demanded.

### The Amended Answer.

[1] We think the ruling of the lower court on the amendment was correct, for the issue therein raised, if well-founded in fact and law, afforded a complete defense to the case, no matter how meritorious or well-founded the demand might have been otherwise. Nor was it contradictory of the other defenses of denial of negligence, and contributory negligence for any or all of them might exist at the same time. The plea was in the nature of a peremptory exception, or plea in bar, tending to defeat the demand, and we think properly allowed.

### The Plea in Bar.

[2] Section 7 of Act No. 20 of 1914 (which was the law existing at the time this case arose) is as follows:

"That when an injury for which compensation is payable under this act shall have been sustained under circumstances creating in some other person than the employer a legal liability to pay damages in respect thereto, the injured employee may, at his option, either claim compensation under this act or obtain damages from or proceed at law against such other person to recover damages; and if compensation is claimed and awarded under this act any em-

ployer having paid the compensation or having become liable therefor shall be subrogated to the rights of the injured employee to recover against that person, and may compromise the claim therefor in his discretion; provided, if the employer shall recover from such other person damages in excess of the compensation already paid or awarded to be paid under this act then any such excess shall be paid to the injured employee less the employer's legitimate and reasonable expenses and costs of the action, which payment shall be credited upon the balance of compensation, if any, that may become due thereafter."

While counsel for plaintiff, in brief and argument, appears to concede that his client would be precluded from pursuing the present action against defendant, as for a tort, by the terms of that statute, if he had demanded or voluntarily accepted compensation, we do not so construe it. All that we think this section intended to do was to give the employer a statutory subrogation pro tanto, to the rights of plaintiff, where otherwise it would have been necessary to obtain from the employer a conventional transfer. The provision does not say that an employee claiming compensation shall forfeit his right of action against a third person by claiming compensation, but that he shall have the option to seek either, but in any event he shall not be entitled to be paid twice that portion of his demand which is represented by the compensation. Such a meaning can only be read into the law by implication, and we think its language would have to be much plainer than it is to have the effect of saying that a tort-feasor can avail himself of a provision in no wise intended for his benefit, and with respect to which he is in no sense a party privy or governed in his responsibility by the law; especially where the effect would be to deprive the employee of substantial rights which he would otherwise have, since, notoriously, the employer's liability law affords but scanty recompense for the injuries which

150 LA.—2

those affected by its operation may receive from the employer.

It is true that the employee is given the right to bring the action against the tort-feasor in his own name and to "compromise the claim therefor in his discretion"; but, in our opinion, this was for the purpose of giving him such an interest in the subject-matter of any such action, as to permit him to protect himself against a liability for which the law makes him responsible, regardless of the fault of others. For even if the suit be brought by the employer, the extent of the liability of the third person is in no way diminished, and the former can receive only a sufficiency to reimburse him his outlay on account of the injury, any excess above that sum still remaining the property of the employee, and by the terms of the law having to be paid over to him, thus clearly disclosing that, notwithstanding the statutory subrogation, he still has a real interest in the subject-matter of such litigation, which is one of the essentials prescribed by the Code of Practice to the maintenance of an action. Code Prac. art. 15.

We also think that, in view of the quoted provision, the defendant would have the right, by timely and appropriate exception (non-joinder) to require that the employer, who had paid, agreed to pay, or been adjudged to pay, compensation, be made a party to the suit, either as plaintiff or defendant, but no such motion has been made in this case, and the most that the court can be asked to do is to deduct from whatever sum, if any, which the plaintiff may recover, the amount of compensation, at its present discount value, which the employer will or should have to pay to the employee under the statute. The object and effect of the law was to allow plaintiff only a fair and just compensation for his injury. In so far as the employer is concerned, the sum or portion to be paid is

fixed by the act of 1914, but as to third persons, the liability is to be determined by article 2315 of the Civil Code and the jurisprudence interpretative thereof.

It is true that the section quoted gives the employer who pays compensation a discretion to compromise the claim against third persons in the circumstances of this case, but it is not one which he is compelled to exercise, and the law of prescription with reference to such actions is just as applicable to any demand by him as any one else. If he does not appear or exercise that right, no one else can complain or assert it for him; and if defendant is credited with the portion which it might have to pay to him, then he (defendant) has no risk of having to pay twice, nor is the employee permitted to recover more than a sum which will reasonably compensate him for his injury. On the other hand, if the employee chooses to exercise his action against the tort-feasor, he is not deprived of his rights against the employer under the statute, but any amount recovered, we think, would have to be credited on the sum due by the employer, or, if more, the claim would be extinguished entirely.

This view gives effect to all the law, without reading into the statute a provision which the Legislature did not see fit to prescribe, we think, either expressly or impliedly. It is true that the act has been amended subsequently (Act No. 247 of 1920) so as to plainly exclude the idea of the employee's being deprived of his action against tort-feasors, but we do not interpret this as meaning that the act of 1914 was intended otherwise, but rather to remove whatever doubt there might have been.

Defendant cites three cases in support of its contention, to wit: Carlson v. Minneapolis St. Ry. Co., 143 Minn. 129, 173 N. W. 405; McGarvey v. Independent Oil & Grease Co., 156 Wis. 580, 146 N. W. 895; and Barry v. Bay State R. Co., 222 Mass. 366, 110 N. E. 1031, 1032.

In the first case, the Minnesota statute expressly provided that the employee or his dependents might, "at his or their option, proceed either at law against such third party to recover damages, or against the employer for compensation, under part 2 of this act, but not against both." As above pointed out, our law contains no such provision, and but for the positive language of the Minnesota statute the court might have taken a different view. In any event, the real point decided in that case was that an employer, who had paid compensation to an employee injured by another could not recover without showing negligence on the latter's part, just as would have been necessary on the part of the injured employee.

In McGarvey v. Oil & Grease Co., the only question decided was that, under the peculiar provisions of the statute, which declared that the mere making of a claim by an employee against the employer should work an assignment of the former's rights against a third person for tort, the employer had the power to assign (by convention) the said claim to any one whom he might see fit to its full extent, without the tort-feasor having a right to complain.

And in Barry v. Bay State Ry. Co., while the statute is not quoted, the court says:

"The plaintiff under part 3, section 15, either could sue the defendant for damages or ask for compensation, but could not recover both."

We assume, therefore that its terms were free from doubt, and the case otherwise turned upon a question of fact as to whether the employee had voluntarily made the election to claim compensation.

We are of the opinion, therefore, that it makes no difference, for the purposes of this case, whether the plaintiff knowingly accepted compensation or not, for we do not think it

would have had the result, even if true, contended for by defendant.

## Defendant's Negligence.

The question of whether defendant was guilty of negligence turns upon the following circumstances:

Plaintiff and another carpenter were engaged in building wooden forms into which other workmen of the Cotton Oil Company operating under another department were to pour concrete to form the walls of a scale pit some 50 feet in length by about 10 feet wide, except that near the center on one side there was a jut in the wall about 4 feet deep and 12 feet long, making the pit at that point about 14 feet in width. They had nearly completed the forms, and the other employees were getting ready to mix the concrete to pour in place. For this purpose a large metal pan 9 feet 9½ inches long by 4 feet 4 inches wide and 5½ inches deep, weighing 370 pounds, was placed on the ground near the pit, and in close proximity to the track of defendant company, which ran parallel to the pit and about 8 feet distant therefrom on the east side. One of the defendants' switch engines backed in on this track in a northerly direction, passed without striking the pan, went to the upper end of the yard of the oil company, some 300 feet or more, remained for a period of time estimated from 10 to 30 minutes, and started back with the locomotive in front drawing two freight cars, at a speed estimated from 4 to 10 miles an hour. In passing the pan, some part of the locomotive struck its end or corner and knocked the pan against the right leg of plaintiff, who was working upon the concrete forms, as stated, and inflicting most serious injuries.

At this point, the important questions of fact and law arise: First, was the pan so close to the rail and in a position reasonably indicating that it might come in contact with the engine; and, second, if so, were the employees of defendant guilty of negligence in not seeing, stopping, and removing it, such as to render the defendant liable for the result which followed the failure to do so.

There is a dispute as to what part of the locomotive struck the pan. Plaintiff's witnesses say it was the rear right side of the engine or front of the tender; while those of defendant say it was the right end of the running board on the front of the locomotive.

At all events, defendant says that the backing locomotive had passed the pan when going into the yard without striking it, and the crew had a reasonable right to assume that they would be able to do so again in pulling out; hence there was no negligence in not stopping and removing the pan before attempting to pass. The pan was not put there by any one for whose acts defendant was responsible, but by the employees of the Cotton Oil Company. It is also reasonably established that no one moved it between the time the engine went in and came out. The only two possible explanations of how its position was changed are that, being on a slight incline toward the track, the vibrations of the engine and cars caused it to slide toward the track; or that the pan was resting on a drainpipe 2 inches long which protruded through the bottom, at the center, and, when the locomotive backed in, the end of the pan toward the track was resting on the ground, being only 5½ inches deep, all parts passing over it, and when the train came out that end had tilted up, which raised its bottom 4 inches (or twice the length of the drainpipe) off the ground, and this, plus the depth of the pan, placed its top 9½ inches above the ground, a height at which it could be struck by parts of the passing locomotive.

Whatever may have been the cause for the pan's getting into a position to be struck, we think the danger should have been seen in,

time to have avoided the accident. If defendant's contention as to its striking the running board was correct, then there was riding on this running board at the time a switchman who says he saw it, and, since all of defendant's said employees say the train could have been and was actually stopped within 4 or 5 feet, he should have appreciated the danger and signaled the engineer to stop. Then, again, the position which the engineer occupied on the same side of the locomotive that the pan was on should have enabled him to also see and appreciate the danger, for his line of vision was clear and straight, past the front of his locomotive on that side, and it must have been apparent, if he had been keeping a close watch, that the engine would not clear the pan, and being able to stop in such a short distance, he should have done so, and the accident would not have happened.

We think a case of negligence is reasonably established. Kird v. N. O. & N. W. R. Co., 105 La. 226, 29 South. 729.

We deem it unnecessary to discuss the conflicting testimony as to just where plaintiff was struck, or how far the train moved thereafter; for defendant had his back to the train, did not know there was any danger until he heard the clash of the locomotive with the pan, and then made every effort to escape, but was caught and severely injured. There is no proof to sustain the defense of contributory negligence.

### Quantum of Damages.

[3] Plaintiff's foot was crushed in the ankle joint, the large bone of the lower leg was broken and protruded through the flesh; he was operated on, and portions of the bones taken out, and a plaster cast was applied, with drain in the side, and so remained for six weeks. Later another operation was performed in which the tendon Achilles was severed, other portions of the bones removed, and an effort made to give him a stiff joint (ankylosis), but this failed, and it is admitted that his foot in the present condition is worse than useless. However, the physicians disagree as to whether or not this condition may yet be accomplished by a proper operation and keeping the plaster cast on sufficiently long. An eminent surgeon testified that in his opinion this result could be had; while the physicians of plaintiff who had attended, treated, and operated upon him were of the view that the foot would have to be amputated. In any event, plaintiff has not been totally disabled, and whichever alternative is pursued, either with a stiff joint, or artificial foot, he should still be able to pursue his calling, and we think the allowance was excessive. True he suffered a great deal, still he should only be allowed such a sum as will reasonably compensate therefor, together with the loss in earning capacity, disfigurement, etc. He was 36 years old, and earning $19.40 a week, or about $85 per month. We, therefore, think that a judgment of $10,-000, less the compensation which he is receiving and will receive from his employer, amounting to 50 per cent of his weekly wages for 300 weeks, or $2,710, would be just and reasonable.

For the reasons assigned, the judgment appealed from is amended by reducing it to $7,390, and, as thus amended, it is affirmed, plaintiff to pay costs of appeal, and defendant those of the lower court.

MONROE, C. J., takes no part.

O'NIELL, J., considers the amount of the judgment excessive, but would otherwise concur in the decree.

### On Rehearing.

PROVOSTY, J. In the railroad yard of the defendant company a number of tracks run close to each other. A scale for weighing railroad cars was being installed in one

of these tracks, which, when completed, would constitute a section of the track. To lodge this scale a long narrow and shallow pit had been dug, and, as the sides of this pit were to be concreted, a pan for mixing concrete had been brought and laid by it, between it and one of the tracks next to the one in which the scale was being installed. This pan was 10 feet long, 4½ feet wide, and 5½ inches high. It was of iron, and weighed 370 pounds. Its corners were rounded. It occupied nearly the entire space between the pit and the track next to which it was—coming within 4 inches of the rail. A locomotive passing on this next track came in contact with it, and shoved it along so that it struck and injured the plaintiff and another carpenter who were in the pit constructing the boxing into which the concrete was to be poured.

The contention is that the engineer should have noticed this pan, and stopped. He had a short while before (the time variously estimated at 10 to 30 minutes) backed a train into the yard on this same track, passing this pan, and, after having disposed of this train, was returning without any cars attached to the locomotive. When backing the train into the yard, as just stated, he had had to stop short of the place where these carpenters were working and allow the switchman to go ahead and clear the track of lumber and débris these carpenters had left upon it. The switchman had then seen this pan, but had not considered it to be in the way. In thus returning the engineer noticed the pan, but felt sure it was not in the way, especially that he had passed it a moment before. As he approached the place where the carpenters were working a brakeman standing on the footboard at the head of the engine signaled him to go slow, and, accordingly, he slowed down to 4 or 5 miles an hour. The pan had been placed in this dangerous position by the foreman of the concrete gang, who stood near it, waiting for his men to arrive to begin the concrete work. The pan, on being struck, would have caught him had he not nimbly jumped into it and as nimbly out. As it was, he fell into the pit, bruising his leg severely. He says that the part of the locomotive which came in contact with the pan was the driver, i. e., the bar connecting the two driving wheels. This may be, but, if so, it could only have been after the footboard had struck the pan and caused it to move towards the driver; for this footboard passed by the pan first, and it reached lower down and further out than the driver. There was a dent in this footboard, showing that it had come in contact with the pan.

Considering that between this footboard and the rail the clearance was of 8½ inches, and that the height of the rail must be added to this, and that the pan rose only 5½ inches above the ground, and that the testimony seems to show no one moved it from the position in which it was when the locomotive passed by it the first time, the collision becomes rather inexplicable. If no one moved it, the most plausible theory must be that the vibration imparted to the ground by the locomotive brought about a change. And this is not entirely improbable, considering that the ground slanted toward the rail, and, again, that extending out from the bottom of the pan, at its center, was a drainpipe 2 inches long, upon which the pan may have been resting more or less as upon a pivot, and thus been rendered mobile. So much so, indeed, as perhaps to have been susceptible of being tilted or otherwise moved by being merely stepped upon or brushed against.

There is no pretense that the engineer was not a careful engineer of long experience.

An effort was made to show that he was not at the throttle, but that the fireman was; but he and the fireman and one of the brake-

men testify that he was, and admittedly he was in the cab.

[4] Our conclusion is that the evidence upon the whole falls short of making out a case of negligence on the part of the engineer.

The judgment appealed from is therefore set aside, and the suit of plaintiff is dismissed at his cost.

MONROE, C. J., takes no part.

O'NIELL and DAWKINS, JJ., dissent.