**WILLIAMS v. CAMPBELL et al. (MARY-LAND CASUALTY CO. Intervener).**

No. 5744.

Court of Appeal of Louisiana.
Second Circuit.

Dec. 9, 1938.

Rehearing Denied Jan. 10, 1939.

Wilkinson, Lewis & Wilkinson, of Shreveport, for appellant.

Harry V. Booth, of Shreveport, for appellee Williams.

E. W. & P. N. Browne, of Shreveport, for appellee Maryland Casualty Co.

TALIAFERRO, Judge.

Plaintiff, an employee of The Texas Company, received serious permanent injuries in a collision between a truck of his employer, on which he was riding, and a trailer attached to a truck of L. T. Campbell, now deceased. He sues Campbell and the Commercial Standard Insurance Company, his carrier of public liability insurance, for a large amount of damages, including $1,979.35, consisting of hospital and physicians' bills for services, etc., rendered him over the long period of his illness and disability. His right to recover is buttressed upon the theory that the negligence of the operator of the Campbell truck alone was responsible for the collision. The facts attending the collision, and as found by the lower court, are fairly well established and are now, in the main, beyond serious dispute.

The gas supply of the Campbell truck became exhausted about the hour of five P. M., December 9, 1936, while it was going north on the main highway between Shreveport and Rodessa. It was stopped on the right (east) side of the road about one-half mile below the latter place, and not over 500 feet from Campbell's office and place of business to which the truck driver repaired for gas. The collision occurred during his absence; not over half an hour after the truck was parked. The truck and trailer, as a unit, was left at an angle to the highway. The former was entirely on the road's dirt shoulder. The left rear wheel of the trailer rested about two feet from the east edge of the road's hard surface. The bed of the trailer evidently extended diagonally farther over towards the road's center. The shoulder at that point is over five feet wide. The paved surface there is twenty feet and eight inches wide. Almost opposite this locus, a dirt road extending westerly intersects the main highway. The truck and trailer were left unattended; no lights thereon were burning, nor flares set nor other signals placed to inform traffic of its presence. A heavy drizzle of rain was falling; the air was charged heavily with vapor; visibility was low. Because of these conditions darkness came on earlier than it would in fair weather. Passing cars had their lights on. The road's surface was very slippery.

The Texas Company's truck was also traveling north, and at a speed not in excess of 25 miles per hour, with lights burning. Plaintiff was sitting on a winch immediately back of the cab, against which he was leaning, facing south. When this truck was approximately fifty feet from the Campbell truck, whose presence to that time had not been observed by the former's driver, a third motor vehicle, with brilliant lights, suddenly emerged from the dirt road, entered the main highway and turned south. The circular sweep of this vehicle's lights blinded the truck's operator and prevented him from discerning objects immediately ahead, and at this juncture or after the lapse of a non-appreciable length of time following the focusing of the lights down the road, the profile of the trailer loomed in view but too close for the collision to be averted, though the brakes were quickly applied.

Leaving the truck and trailer parked on the highway, in the manner above described, is the negligence charged to defendant's operator, because of which plaintiff relies for recovery.

Defendants generally deny the basic allegations of the petition. They specially deny that it was necessary or advisable to leave the truck parked in a manner other than was done by its driver. It is also specially pleaded that the direct and proximate cause of the collision was the negligence of the operator of The Texas Company's truck in these respects: (a) failing to keep a proper lookout for traffic ahead of him; (b) driving at an illegal and excessive rate of speed; (c) by not driving the truck in such manner and at such speed as to make it possible for him to stop it within the distance illumined by its headlights. These acts of negligence, it is averred, are imputable to plaintiff; and employing said acts as a basis and averring that plaintiff did not protest against them nor ask to be allowed to leave the truck, alternatively, defendants tender a plea of contributory negligence in bar of his right to recover.

Further, in the alternative, it is alleged that the operator of The Texas Company's truck had the last clear chance to avoid the accident and failed to do so; that his action in this respect was the proximate cause of the accident.

And, lastly, in the alternative, defendants aver and contend that plaintiff did not co-operate in the treatment of his injuries, and thereby failed to minimize the damages resulting therefrom.

The Maryland Casualty Company, availing itself of the provisions of subsections 2 and .3 of section 7 of the Workmen's Compensation Law, Act No. 20 of 1914, intervened and asserted that it had paid plaintiff compensation at the rate of $11.80 per week from date of his injury to the time of filing the intervention, and that it was bound to continue such payments; that it had also paid for his account medical and hospital expenses in the sum of $901.50. Intervenor asserted the right to be reimbursed all said payments by preference and priority over all other persons, plaintiff not excepted, from any judgment awarded him herein; and also the sum of $500 as a reasonable fee due its attorneys for services in filing and prosecuting the intervention. Intervenor joined plaintiff in his demand for damages and adopted the allegations of his petition therefor, and prayed for judgment against defendants for the total of compensation payments made and to be made to plaintiff and for judgment for $500 to cover counsel fee, above described, all of which to be paid by preference from such judgment as plaintiff shall recover. There is no prayer for judgment against any one for the $901.50.

The intervention was filed December 20, 1937. Thereafter, on the joint petition of plaintiff, The Texas Company and the Maryland Casualty Company, the following judgment was rendered and signed by the District Court of Caddo Parish, viz:

"In this cause by reason of the joint petition of the Texas Company and its insurer, Maryland Casualty Company, and Sedberry Williams, filed herein, and the agreement that judgment be entered herein for compensation as set forth in said petition likewise being considered, and the law and the evidence being in favor thereof;

"It is ordered, adjudged and decreed, that said Sedberry Williams have and recover judgment against the said Texas Company and its insurer, Maryland Casualty Company each individually and in solido for the compensation at the rate of $11.70 per week for a period not exceeding 400 weeks from December 9th, 1936, less 68 weeks compensation at said rate already paid.

"It is further ordered and decreed that medical and hospital expenses paid in the

treatment of said plaintiff for said injuries by the said Texas Company or its insurer, the Maryland Casualty Company, in the amount of Nine Hundred and One ($901.-50) and 50/100 Dollars, as set out in their petition herein filed, be credited to them as such.

"It is further ordered that the said Texas Company and its said insurer, the Maryland Casualty Company, be reserved and granted the right to claim and collect all said compensation and medical hospital expenses, as herein allowed to plaintiff, from any third party or parties for personal injuries suffered by him in the collision described in the petition filed herein.

"It is further ordered and decreed that the said Texas Company and its insurer, Maryland Casualty Company are specially reserved the same rights in this or any other proceeding as all employers, under the provisions of sections 7, 9, 10, 11 and 20 of the Employer's Liability Act of Louisiana, as well as other provisions of said Act.

"Thus done and signed at chamber on this the 20th day of January, 1938."

A copy of this judgment and of the petition and prayer therefor was introduced in evidence without objection.

To the intervention, defendants made general denial. They aver that if intervenor is entitled to recover any amount on account of medical, hospital and physicians' bills that $250 is the limit on that account under the Workmen's Compensation Law. Act No. 20 of 1914.

Plaintiff admits the correctness of all of the allegations of the petition of intervention.

Defendant Campbell having died since the institution of suit, plaintiff voluntarily entered a non-suit as to him and his succession.

There was judgment in plaintiff's favor for $7,327.85 with interest from judicial demand. Intervenor was awarded judgment against plaintiff for all compensation payments made to him to date of judgment and for such other payments as shall be made to him thereafter, with recognition of the right to be paid said amounts by preference from the judgment rendered in plaintiff's favor; and for $250 for medical and hospital expenses paid for his account, and also for $500 counsel fee, with interest on all said amounts.

Defendant and the intervenor have appealed. Plaintiff, appellee, answering the appeal of defendant, prays for increase in the award in his favor to $11,979.35.

It is not now seriously questioned by defendant that leaving the Campbell truck parked on the highway, as was done by its operator, in view of the weather conditions and time of day, without lights, flares, etc., to apprise others of its presence, amounts in law to gross negligence. The undisputed facts impel us to this conclusion. But defendant strenuously argues that this negligence was not the proximate cause of the collision, therefore liability for its consequences may not be imposed upon Campbell nor his insurer. Ordinarily this position would be unanswerable. The rule is well established that when a motorist collides with a stationary object on his side of the highway at night, he is generally deemed guilty of negligence. The rule, however, as is true of nearly all rules of law, has its exceptions. This rule is simply a corollary to another rule, equally important and as well fixed in the jurisprudence, viz: that it is negligence for a motorist to operate a car at night at a speed so fast that it cannot be stopped within the distance illuminated by its lights. It is the law also, as contended by defendant, that a motorist will not be held free of negligence if he fails to stop his car, or bring it under such control as to enable him to stop it instantly when blinded by the lights of an oncoming vehicle.

The Texas Company truck was not being driven at an excessive rate of speed; on the contrary, its speed was very conservative. If traveling 25 miles per hour, it would cover 36 feet and 8 inches per second; and at 20 miles per hour, it would travel 29 feet, 4 inches per second. At either speed this truck, in point of time, was not in excess of two seconds from the Campbell trailer when the third motor vehicle drove upon the highway from the sideroad, and blinded the truck operator with its bright lights. Prior to this juncture, the operator had not observed the parked truck ahead of him. Had he then been able to observe it, doubtless he could have averted a collision by veering his own truck to the left; provided the presence of the third vehicle would not have prevented him doing so. In these circumstances, out of an abundance of caution, he might have applied the brakes suddenly, but

in view of the weight of his truck (6,500 pounds) and the slippery condition of the road, it is wholly improbable that this emergent action would have avoided the collision. It requires an appreciable lapse of time for a motorist, after realizing he is confronted with an emergency, to co-ordinate his mental faculties with his physical power, and through application of the brakes bring his car to a stop. In the meantime, the car is moving forward and reducing the distance between it and the object ahead. Human resolutions may not be formed and executed in the same breath. One may not be expected to act calmly and form as accurate conclusions in the face of a sudden emergency as would be the case when acting deliberately. Be this all as it may, we do not think the operator of the Texas Company's truck negligent because he failed to apply his brakes more quickly than he did after the emergency arose because of the movements of the third motor vehicle. The intervention of this agency in the manner and at the time it did precipitated a situation, to which the Texas Company operator contributed to no extent, which certainly makes of the present case an exception to the rules above outlined; and frees said operator from the charge of negligence as the or a proximate cause of the collision. And when this conclusion is reached, the whole case recurs upon the original negligence of Campbell's operator.

The facts of the case of Waters et al. v. Meriwether Transfer Co., Inc., 18 La. App. 18, 137 So. 578, 581, are strikingly similar to those of the present case. The legal principles involved therein are also applicable to this case. In that case bright lights of a car suddenly confronting another contributed largely, if not entirely, to an accident. Inter alia, this court, through Judge McGregor, said [page 581]:

"A sudden emergency was thus created, and he acted with the best judgment possible. Ordinarily, it is always held that a driver of an automobile must see every parked car or object on the right side of the road at night in time to stop his car before colliding with it, nor is he excused because of on-coming bright lights. If bright lights blind him, he must pull to the right and slow down or stop until the confusion is over. But if the sudden appearance of bright lights prevents him from seeing the parked vehicle and creates an emergency, he is not guilty of negligence, and is excusable, if he meets this emergency with the best possible judgment. In all the cases in which it is held that the driver of an automobile cannot be excused because of being blinded by approaching bright lights, the evidence shows that the driver of the automobile sees the bright lights for a considerable distance in front of him, and proceeds in spite of being blinded. But if the bright lights are brought suddenly into view, and there is no time between the first appearance of the bright lights and the happening of the accident to observe the necessary rules of caution with reference to stopping and pulling to one side, the driver of the automobile cannot be charged with negligence for not stopping."

See, also, Louisiana Power & Light Co. v. Saia, La.App., 173 So. 537, Id., 188 La. 358, 177 So. 238, and authorities therein cited which affirm this doctrine.

Having exonerated The Texas Company operator from negligence in connection with the accident, the other pleas advanced and urged by defendant pass from the case, except that relative to lack of co-operation of plaintiff in the medical efforts to restore him to good health.

The lower court rejected plaintiff's demand for all of the medical, hospital and physicians' bills incurred by authority of and paid by intervenor excepting $250 thereof, the maximum of liability imposed by law on the employer for such expenses. The intervenor's suit against plaintiff for said amount to same extent was rejected. The status of the rejected amount,—$651.-50,—is the subject of controversy between the parties. Who, if any one, is entitled to recover the amount and from whom, is submitted for decision.

It is well to here interpolate that it seems clear to us that plaintiff is now bound personally to the intervenor, on the face of the papers, to not only repay to it this $651.50 but the $250 also. The judgment above copied, and the joint petition, upon which it was rendered, definitely support this conclusion. Intervenor is therein authorized to credit its liability for compensation payments with the entire $901.50. It does not appear that this has been done in whole or part. Anent these questions see: Nichols v. Tall Timber Lumber Co., La.App., 145 So. 691; Thompson v. Louisiana Central Lumber Co., 2 La.App. 200; Delaney v. Ferd. Brenner Lumber Co., 154 La. 156, 97 So. 349;

Quave v. Lott-Batson Lumber Co., 151 La. 1052, 92 So. 678.

The entire $901.50 was expended by the insurer in furtherance of the desire to restore plaintiff to such physical condition that he could resume work. If this could be done the insurer's liability for compensation payments would terminate. While these expenses were accumulating plaintiff was treated by physicians of the insurer's own selection. Said expenses reached $901.50 before the insurer abandoned the hope of restoring plaintiff to good condition. Thereafter he chose his own physician and acted on his advice.

It is not contended that these expenses were not providently incurred. Surely the entire amount is an element of damages directly chargeable to the negligence of the tort-feasor; and, although it may be said that plaintiff at time it was incurred could not be personally held for its payment, yet in suing for all the damages resulting from and as a consequence of the negligence of which he is the victim, he may include this amount in his demand.

We have not been cited to, nor are we aware of, a Louisiana case dealing with this principle wherein the facts are the same, or nearly so, as here appears. Rigby v. Ætna Casualty & Surety Co., La.App., 151 So. 119, 123, is easily differentiated. There is lack of uniformity in the decisions of other jurisdictions. Some hold that actual payment of expenses of this character or the definite obligation to do so on the part of the injured person is an indispensable prerequisite to recovery therefor. 17 Corpus Juris, page 803, § 129.

But the majority rule is that an injured person is entitled to recover as an element of damages for his injuries the value of nursing and physician's services, and for medical and hospital bills providently incurred in his behalf although he be not personally bound for their payment and although, as held in many cases, such services be gratuitously rendered to him. Ann. Cas.1914D, p. 926.

The principle is succinctly discussed in 8 R.C.L., page 555, §§ 105 and 106, to-wit:

"If from motives of affection, philanthropy, or as the result of a contract, the plaintiff has received from one other than his employer any sums the reception of which is directly attributable to the fact that he had been injured, the person causing the injury will not be allowed to urge the payment of such sums in mitigation of the damages claimed against him. And so a wrongdoer will not be permitted to benefit by payments made to the injured person from collateral sources, whether in compensation or as gratuities; nor will the payment of insurance moneys, to which the wrongdoer does not contribute, be considered in estimating the damages." § 105.

"Under the general rule discussed in the preceding paragraph, the fact that medical attention and nursing have been rendered gratuitously will not preclude the injured party from recovering the value of such services. Accordingly, the defendant cannot take advantage of the fact that the doctor's bill and expenses were paid for the plaintiff by a beneficial society, or by members of his family, nor is it material that the plaintiff is a physician, and that it is the general custom of physicians to attend upon each other, in case of sickness or injury, free of charge." § 106.

Of course, since plaintiff has committed himself personally to the payment of all of said $901.50, subsequent to its incurring, his right to sue for the amount as an element of damages would appear not debatable.

Notwithstanding the lack of definiteness in the allegations and prayer of the petition of intervention, all counsel and the trial judge treated the action as being in the nature of a concursus, and judgment against plaintiff, also defendant, to an extent not prayed for, was given. No criticism is here made to the judgment on this score; no exception was taken to intervenor's right to proceed as it has done. And since we hold that plaintiff is entitled to judgment against defendant for the entire $901.50, it follows as a corollary that intervenor should be given judgment against plaintiff for said amount.

The plea that plaintiff failed to minimize the seriousness and duration of his injuries is predicated upon his refusal to consent to amputation of the lower part of the right leg as was recommended by the physician who first treated him and another called in consultation. The physician who has treated him since June, 1937 to day of trial advised against the amputation and was of the opinion that the leg could be saved.

No citation of authority is necessary to sustain the proposition that in a case of this character, an injured person is not prejudiced in his right to sue for and

recover damages because he will not consent to have so serious an operation performed. Danger of loss of life is always, to some extent, present. Generally, there is hope that the limb may be saved to the patient, as was and is true in the present case. We find no merit in this defense.

Dr. Harold Quinn describes plaintiff's injuries as follows:

"He had a compound comminuted fracture of the right tibia and fibula, with infection at the middle and upper third of the leg. The left leg had a comminuted fracture of the middle third of his leg of both tibia and fibula. The left leg was not compound, the bone did not go through the skin."

The broken bones of the right leg protruded through the flesh about two and one-half inches. Doubt was entertained by Dr. Quinn that satisfactory union of the bones could ever be effected. The same doubt was not had as to the left leg. The second day after injury it was found that the wound of the right leg was sloughing and running pus. This was evidently traceable to prior existing infection of the leg. It was found that this malignant condition militated against normally quick healing of the left leg, and because of this influence it was deemed best by Dr. Quinn and Dr. Fleming that the right leg be amputated above the break. The usual treatment for broken limbs was administered to plaintiff, such as casts, etc., with their discomforting effects. He suffered pain, intermittently, of a more or less serious character. He was treated at the expense of intervenor in the Schumpert Sanitarium in Shreveport from time of injury to June 23, 1937, over six months. Intervenor would bear no further expense in his behalf. He was then removed to another sanitarium and has been there treated by a physician of his own selection until day of trial, January 21, 1938. He was then unable to walk. His disability since being injured has been total. More than half a dozen operations have been performed on him. The left leg is now in good condition. The right leg has continuously run pus. Operations to relieve this condition were performed on June 29, August 4 and October 19, 1937. Dr. Boone, at trial, described the right leg's condition as follows:

"A. The foot is at right angle to the leg; the toes of the right foot are flexed towards the sole of the foot; there are two openings at the medial side of the right leg through which there is a rubber catheter for drainage—for irrigation, I should say. There is no union between the fragments of the tibia, these fragments being widely separated.

"Q. Do you intend to attempt or would it be reasonable to attempt bone graft on that limb at any time in the future? A. Well, we are hoping for that but it could not be attempted now until all infection has subsided.

"Q. Would you not say it would be at least a year from this time before you could reasonably attempt such an operation? A. I am anticipating a year."

Plaintiff was 32 years of age when injured. Prior to that time he was robust and regularly engaged in the heavy work of oil field laborer, and was paid good wages.

The trial judge allowed plaintiff $6,000 for pain, suffering, disability, etc. We think this amount in line with awards in cases of like or similar character decided by this and other appellate courts of the state.

Plaintiff died on November 2, 1938. Jenett Williams, his widow, has been appointed as administratrix of his succession. On her motion the administratrix has been substituted as party plaintiff, and was authorized by this court to prosecute this suit and stand in judgment herein. Subsequent to this action, counsel for intervenor filed motion in this court, concurred in and assented to by counsel for plaintiff, wherein it is set forth that intervenor had paid to plaintiff all compensation due him to the date of his death, a total of $1,158.30, and we are requested to definitely award intervenor judgment for this amount against plaintiff, payable by preference from any judgment given herein against defendant.

And lastly, defendant moves us to hold that since Sedberry Williams demised during the pendency of this appeal, the judgment in his favor automatically abated, ceased to exist or be of effect, and, in the alternative, that the ex parte order of this court permitting Jenett Williams, administratrix, to be substituted plaintiff should be set aside on the ground that "she is not the proper party" to further prosecute the suit and stand in judgment.

There is no merit in either contention. The succession of Sedberry Williams, presumably, has been regularly opened in the district court of his domicile, and

690

his surviving widow has been appointed administratrix. Due proof of such appointment was presented to this court prior to signing the order allowing the substitution. No direct attack is made on the judicial action whereby the widow received said appointment. If she, for any reason, in her official capacity, is not the proper party to prosecute the suit to final judgment, that fact is not disclosed in the motion. The "proper person" or persons to perform this duty are not named.

■■■■■ The property of a deceased person descends to his heirs, in the absence of last will, subject to discharge therefrom of his legal obligations. And where, as in this case, sufficient showing to a competent court has been made to warrant the appointment of an administrator of the deceased's succession, the rights (unsecured, at least) of all persons in or to the assets of the succession, including heirs, are necessarily held in suspense pending liquidation of the succession, under the direction of the court. The administrator, it is elemental, acts for the heirs, creditors, and all others having a real interest in the succession until final settlement of its affairs, and the discharge of the administration by a court of competent jurisdiction. In such official is vested the power to sue on behalf of and stand in judgment in suits against the succession.

■■■■■ While it is true, as has been often held, that a personal action for damages in tort abates on the death of the injured person, it has not been held, nor could it reasonably be so held, under existing laws, that a judgment rendered in favor of the plaintiff in such an action abates or ceases to be effective as such, upon the death of the plaintiff pending a hearing of the case on appeal. After rendition of judgment the action through and by which it was procured ceases to exist and there arises therefrom the highest form of liquidated obligation. The fact that the judgment is not final does not affect the plaintiff's property right therein; nor the transition precedent to its coming into existence. Such a judgment, though inchoate because of lack of finality, is nevertheless property and may be transmitted to the heirs of the judgment creditor on his death. Code of Practice, article 548; Vincent v. Sharp, 9 La.Ann. 463; Castelluccio v. Cloverland Dairy Products Co., Inc., 165 La. 606, 115 So. 796.

The motion under discussion is overruled.

For the reasons herein assigned, the judgment in plaintiff's favor, appealed from, is amended by increasing the amount thereof to seven thousand, nine hundred seventy-nine and 35/100 dollars ($7,979.-35); and the judgment for medical and hospital expenses in favor of intervenor is increased to nine hundred and one and 50/100 dollars ($901.50). And, in keeping with said joint motion of counsel, the amount of compensation paid plaintiff by intervenor to the date of his death is hereby fixed at $1,158.30, which amount shall be paid intervenor by preference from the judgment recovered by plaintiff herein.

As amended, the judgments appealed from are affirmed with costs.