AMERICAN UNIVERSAL INSURANCE COMPANY, Appellant,

v.

Edgar S. CHAUVIN, Appellee.

No. 20902.

United States Court of Appeals Fifth Circuit.

March 12, 1964.

Rehearing Denied April 8, 1964.

Robert E. Leake, Jr., New Orleans, La., Hammett, Leake & Hammett, New Orleans, La., for appellant.

Raymond H. Kierr, New Orleans, La. (Johnny X. Allemand, Thibodeaux, La., Kierr & Gainsburgh, New Orleans, La., of counsel), for appellee.

Before BROWN, MOORE,* and GEWIN, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

The Erie problem, Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, here is not whether significant signposts point the way to decision. Rather, it is whether the signs either exist or significantly outline a detour around the roadblock which stops Appellant's claim in its tracks.

█ It begins and ends in Louisiana this way. Under the Louisiana Workmen's Compensation Act, the compensation Insurer,[1] as does the injured Employee, has a right of action against a third party tort-feasor.[2] The Employer-Insurer's right of recovery rests on statutory subrogation to the rights of the

---

\* Of the Second Circuit, sitting by designation.

1. The Insurer succeeds to, and has, all of the rights of the Employer. LSA–R.S. 23:1162:

    "No policy of insurance against liability [under the Compensation Act] shall be issued unless it contains the agreement of the insurer that it will promptly pay to the person entitled to compensation all installments * * * that may be awarded * * *. This agreement shall be construed to be a direct obligation by the insurer to the person entitled to compensation, enforceable in his name. * * *.

    "The insurer shall be subrogated to all rights and actions which the employer is entitled to under this * * * [Act]."

2. LSA–R.S. 23:1101: "When an injury for which compensation is payable * * * has been sustained under circumstances creating in some [third] person * * * a legal liability to pay damages in respect thereto, the injured employee * * * may claim compensation * * * and * * * may obtain damages from * * * such third person to recover damages for the injury.

    "Any employer having paid or having become obligated to pay compensation * * * may bring suit against such third person to recover any amount which he has paid or become obligated to pay as compensation to any injured employee or his dependent."

injured employee. The Insurer, in effect, has a first claim on any third party recovery to the extent of "compensation actually paid." [3]

■ The term "compensation actually paid", though not expressly defined, is understood by all to include expenditures by the Insurer for necessary medical and hospital services. The controversy centers, not on the nature of the medical services or expenditures, but rather on the *amount*. This comes about because the Compensation Act prescribes a statutory maximum of $2500,[4] but in effect authorizes an employer to procure at its sole cost insurance for coverage (including medical) beyond the requirements of the Act. LSA–R.S. 23:1165.

So the precise question presented here is whether in the distribution of the third party recovery, the insurer is entitled to reimbursement from the third party for excess medical costs, excess meaning in excess of the statutory maximum of $2500.[5] In the order for distri-

bution of the agreed compromise settlement recovery, the District Court disallowed reimbursement for excess medical.[6]

Without being swayed by equitable pleas against this somewhat unusual result, the District Judge frankly did his Erie duty on the basis of DeRoode v. Jahncke Service, La.Ct.App., 1951, 52 So.2d 736. But before discussing this case, it is well to emphasize at the outset that the only controversy presented in the District Court concerning this problem was between the Insurer and the third party defendants. The Insurer was not a plaintiff against the injured employee. Though each was contesting vigorously for priority in distribution of the fund, no claim was asserted there or here by the Insurer against the injured employee. The Insurer's position was exactly what it would have been had the third party case been tried to judgment. Perhaps more precisely, the Insurer's position was as though it

3. LSA–R.S. 23:1103: "In the event that the employer or the employee * * * becomes party plaintiff in a suit against a third person * * * and damages are recovered, such damages shall be so apportioned in the judgment that the claim of the employer for the compensation actually paid shall take precedence over that of the injured employee * * *; and if the damages are not sufficient or are sufficient only to reimburse the employer for the compensation which he has actually paid, such damages shall be assessed solely in his favor; but if the damages are more than sufficient to so reimburse the employer, the excess shall be assessed in favor of the injured employee * * *, and upon payment thereof to the employee * * * the liability of the employer for

compensation shall cease for such part of the compensation due * * * and * * * satisfied by such payment.

"No compromise with such third person by either the employer or the injured employee * * * shall be binding upon or affect the rights of the others unless assented to by him."

4. LSA–R.S. 23:1203: "The employer shall in every case * * * furnish reasonable medical, surgical, and hospital services and medicines * * * not to exceed Twenty-five Hundred Dollars in value, unless the employee refuses to allow them to be furnished by the employer." As amended Acts 1952, No. 322, § 1; Acts 1956, No. 282, § 1 (prior to 1952 the statutory maximum was $500).

5. The compensation Insurer's claim was as follows:

| | | |
|---|---|---:|
| (1) Weekly compensation benefits | | $9,240.00 |
| (2) Medical: | (a) Statutory maximum | 2,500.00 |
| | (b) Excess medical | 8,417.21 |
| | | $20,157.21 |

6. Compromise settlement payment by third parties — $77,458.50

Reimbursement allowed to compensation insurer

| | | |
|---|---|---:|
| Item 1. Compensation benefits | $9,240.00 | |
| Item 2(a) Statutory medical | 2,500.00 | 11,740.00 |
| Balance for injured employee | | $65,718.50 |

alone had sued the third party defendants. The Insurer's rights against the third party derived solely from subrogation to the *employee's* rights, and there being no conventional (consensual) subrogation, the Insurer's claim rested entirely on §§ 1101, 1103 of the Compensation Act (notes 2, 3, supra).[7]

Without a doubt DeRoode is this very case. Moreover it is one determined by the highest writing Court thus far to speak for Louisiana. Ford Motor Co. v. Mathis, 5 Cir., 1963, 322 F.2d 267, at 269, n. 1; Smoot v. State Farm Mutual Automobile Ins. Co., 5 Cir., 1962, 299 F.2d 525, 529, n. 9; United Serv. Life Ins. Co. v. Delaney, en banc, 5 Cir., 1964, 328 F.2d 483, at 486, 487, nn. 5–9. As the opinion reflects, there the Insurer by the appropriate standard excess medical coverage endorsement "undertook to provide, in addition to the statutory medical * * * required by the * * * Workmen's Compensation Law"[8] reasonable and proper costs as the Insurer believed to be necessary. There, as here, the Insurer in the suit against the third party defendant claimed that it had become subrogated "to the extent of any payment to all rights of recovery therefor vested by law either in the employer or in any employee."[9] That Court, as did the trial Court below, inescapably had to "determine what is the extent of the right to which the [Insurer] is automatically subrogated under the compensation law * * *." Its response was plain and emphatic:

"We think, however, that the statutory provision [LSA–R.S. 23:1101, 23:1103, notes 2, 3, supra] cannot be interpreted as including any sums in excess of those for which, under the act, the employer [or Insurer] is mandatorily liable and should not be held to include any other amounts or sums for which he may, by contract or agreement, voluntarily make himself liable. The employer [or Insurer] could, of course, pay such additional amounts and, by conventional subrogation from the employee, obtain the right to demand those amounts back from the person at fault, but it is not shown here that there has been any such conventional subrogation." 52 So.2d 736, 744.

The Insurer here does not minimize either the existence or the decisive nature of this holding. It recognizes that the District Court, as is this Court, was bound by it under Erie. The Insurer recognizes that it has the laboring oar in demonstrating a shift in the currents by some recognizable, objectively legal-hydrographic data transcending a mere psychoanalysis of Louisiana Courts in terms of personal changes or developments in socio-legal outlook. It undertakes to carry that burden in several ways.

The first effort is to stress equitable principles and particularly that of subrogation with heavy reliance upon such cases as International Paper Co. v. Arkansas & Louisiana M. Ry., La.Ct.App., 1948, 35 So.2d 769. There, the Court pointed out, the third party recovery provisions of the Compensation Act,

---

7. The Insurer, in C.A. 8713 and 9089, sued the third parties to recover the amounts paid or obligated to be paid to Chauvin as a result of his injury. At about the same time Employee Chauvin in C.A. 9091 sued all of the third parties sued by Insurer. The three cases were consolidated for trial. On the eve of trial, the claims for damages of Employee Chauvin (including those of the Insurer) were compromised for $77,458.50 by a settlement approved by all. It was at this point that the narrow issue before us was posed. Insurer, in C.A. 8713 and 9089, had prayed for judgment for the total medical expenses, statutory and excess, which it had paid. The employee moved to dismiss the claims of Insurer for excess medical and alternatively for summary judgment adjudicating that as a matter of law, Insurer had no right to reimbursement of excess medical. The motion of employee for summary judgment was granted. The amount in dispute ($8,417.21) was deposited in the registry pending determination of this appeal.

8. 52 So.2d 736, at 738.

9. Ibid.

notes 2 and 3 supra, " * * * in effect, simply invests the employer with the right to recover of the person through whose fault the employer has had to pay compensation, the amount paid on that account and amounts for which he is obligated to pay." Echoing Professor Malone's textbook, Malone, Louisiana Workmen's Compensation Law and Practice 470, 477, the Court in Geter v. Travelers Ins. Co., La.Ct.App., 1955, 79 So.2d 120, emphasized the avoidance of double recovery. "A mere reading of the Louisiana Workmen's Compensation Law, L.S.A.–R.S. 23:1101–23:1103, reveals that the statute does not contemplate a full double recovery by an injured employee in both tort and workmen's compensation." Consequently, the Court held, "[T]he victim should not be entitled to both full damages and to compensation."

Conceding that the Insurer's rights to participate in the third party recovery amounts simply to statutory subrogation pro tanto, Lowe v. Morgan's Louisiana & T.R. & S.S. Co., 1922, 150 La. 29, 90 So. 429, we find these principles utterly unhelpful in this problem. At the outset one thing seems quite plain. These general principles did not spring into being subsequent to 1951, the date of DeRoode, and that Court, at least authoritatively for Erie, inescapably rejected them.[10]

A more substantial argument is advanced that there has been a significant change in the underlying Louisiana principles since DeRoode. This argument, somewhat involved, and approaching juridical psychoanalysis, rests finally on an assertion that the judicial "climate" or "atmosphere" has changed since DeRoode. The Insurer, by a perfectly lawyer-like analysis, escapes any aspersions for this approach. Without going into great detail, it runs this way. Under cases such as Kinder v. Lake Charles Harbor & Terminal Dist., La.Ct.App., 1947, 31 So.2d 498, and earlier practices by employers or their insurers which sometimes compelled the injured employee to agree to reimburse such excess medical, Williams v. Campbell, La.Ct. App., 1939, 185 So. 683, the Louisiana Courts frequently referred to this excess medical as a "gratuity."[11] The next phase of the argument is that subsequent to 1951 the Louisiana Courts have definitely established that the injured employee has legally enforceable rights against the insurer for the recovery of excess medical. In Cummings v. Albert, La.Ct.App., 1956, 86 So.2d 727, the Court squarely held that an employee had such a legal right.[12] It based its decision on the principle of a third party beneficiary contract—there described in the engaging terms of the civil law as a stipulation *pour autrui*—a result indeed not surprising in view of the plain language of LSA–R.S. 23:1162, note 1, supra. Some consider that this was carried further in Miller v. Continental Casualty Co., La.Ct.App., 1962, 146 So.2d 842, grant of cert. withdrawn, 1963, 244 La. 649, 153 So.2d 875, since that involved the unusual provision of the Louisiana Compensation Act which makes prime contractors liable for injuries to employees of subcontractors. See LSA–R.S.

10. Strictly speaking, the policy against so-called double recovery is not clearly recognized. Indeed, in DeRoode the Court, on doctrines analogous to those now referred to as the collateral source rule, see Tipton v. Socony Mobil Oil Co., 5 Cir., 1963, 315 F.2d 660, 662 (dissenting opinion), reversed per curiam, 1963, 375 U.S. 34, 84 S.Ct. 1, 11 L.Ed.2d 4, recognized that the tort-feasor was not entitled to a deduction from the damages awarded against it for the medical payments made by others who had no right of recovery therefor. See

also Williams v. Campbell, La.Ct.App., 1939, 185 So. 683, 687–688; Fullilove v. United States Cas. Co., La.Ct.App., 1961, 129 So.2d 816, 832.

11. This descriptive was repeated as late as 1960 in Pope v. Coney, La.Ct.App., 1960, 119 So.2d 136, at 140.

12. The principle was really foreshadowed by Smith v. W. Horace Williams Co., La. Ct.App., 1956, 84 So.2d 223 although the employee did not recover under the peculiar facts of that case.

23:1061. There an injured employee of a subcontractor had exhausted the statutory maximum medical benefits provided by his employer's compensation insurance. Nevertheless, he was permitted to recover excess medical from the compensation insurer of the prime contractor.

■ Without a doubt, both Cummings and Miller are strong cases in the sense that a gratuity would hardly be legally enforceable. It may well be that the Courts of Louisiana will recognize this either by a change of climate, of atmosphere, or, more forthrightly, by a deliberate choice which those Courts are free to make (and we are not). These Courts may someday conclude that there is really little to distinguish statutory maximum medical from excess medical either in terms of cost, benefit, or legal enforceability, and consequently the general principles of subrogation recognized in the Compensation Act should entitle the Insurer to a priority for both. Nothing we here do or say is intended as even a gentle reverse-Erie breeze to the contrary. So much domestic Louisiana policy is wrapped up in the unique manner it cares for injured workmen, see, e. g., Kent v. Shell Oil Company, 5 Cir., 1961, 286 F.2d 746, 750–751, 1961 AMC 1671, that we should not add to the problem by gratuitous comments assaying the arguments now made as they might register on the mind of the Louisiana Courts.

■ But this is not enough. Although we recognize that Louisiana may soon be persuaded by the force of the arguments based upon Cummings and Miller and their new look at excess medical, the signs are not plain enough either by their legend or direction to allow us to consider DeRoode as never having been written. That leaves, of course, the suggestion that we should abstain to permit determination of this question at this time between these parties and in this controversy by the Louisiana Courts. When to abstain and how we are to go about it is certainly no easy matter as our recent opinions have revealed. United Serv. Life Ins. Co. v. Delaney, en banc, 5 Cir., 1964, 328 F.2d 483, see former opinion, 5 Cir., 1962, 308 F.2d 484. We hardly think this is the case. Only a few factors need be briefly mentioned. The first is, of course, the Insurer, aware as it must have been of DeRoode as a lion in the streets, Yorkshire Indemnity Co. of New York v. Roosth & Genecov Prod. Co., 5 Cir., 1958, 252 F.2d 650, 655, chose the federal forum in which to litigate this small tail end of a multi-party, many-cornered Donnybrook. Of course the agreed settlement compromised litigation then pending in the Federal Court. But the Insurer was hardly helpless since the statute expressly provides that "[n]o compromise with such third person by either the employer or the injured employee * * * shall be binding upon or affect the rights of the other unless assented to by him," LSA–R.S. 23:1103, note 3, supra. Until the Insurer gave its assent to the payment of the sums either direct to the parties or into the registry, it is safe to assume that the third party defendants would hardly have settled the claims. Indeed, the record affirmatively reflects that the Insurer knew of and approved the settlement. The simple fact is that the Insurer fails to demonstrate that it lacked sufficient control over its own part of this litigation to work out suitable arrangements by which it could institute in the State Courts of Louisiana an appropriate declaratory judgment proceeding (see LSA–C.C.P. arts. 1871–1883) to determine the relative rights to participate in the disputed portion of the fund representing the excess medical. No permission from the Federal District Court was needed for this. Consequently, the failure of the lower Court to grant the Insurer's motion for stay pending the filing and determination of a Louisiana proceeding seems of little significance.

■■ We think, therefore, under the circumstances of this case the trial Court was entitled to accept DeRoode at its face value thereby leaving to some future date, time and case the Louisiana deci-

sion of Louisiana policy and Louisiana law whether the Insurer's subrogation rights against the third party do or do not include excess medical.[13]

Affirmed.

---

13. Consistent with accepted principles of res judicata and full faith and credit, there may yet be a limited phase of this case open for decision by the Louisiana Courts. The trial Court expressly relied on DeRoode and its decision, which we approve, necessarily adopted that part of DeRoode which seems to recognize the possibility of an obligation on the part of the employee *vis-a-vis* the insurer. In the decretal portion of the opinion, 52 So.2d 736, 746, the Court provided that the Insurer-"intervenor shall also be paid and receive out of said judgment medical expenses in the sum of $500.00 [statutory maximum]." But it then significantly added: "for the remainder of the amount spent for medical and related expenses intervenor [insurer] must look directly to the plaintiff." As discussed earlier at note 7, supra, the contending parties below and here are the injured employee and the Insurer, but the real subject matter of this controversy was the Insurer's right, as subrogee of the employee, to moneys paid by the third party defendants. In those funds the Insurer, whether as direct plaintiff or intervenor, stood only as subrogee in the shoes of the injured employee. Determining rights to participate in, and the requirements for apportionment of, a fund, the District Court did not undertake to adjudicate the direct liability of the injured employee to the Insurer. Except to recognize that this limited claim has not been adjudicated, we intimate no opinion as to its merits.