**Ralph O. FLOWERS, Appellant,**

v.

**SAVANNAH MACHINE & FOUNDRY CO. et al., Appellees.**

**No. 19480.**

United States Court of Appeals Fifth Circuit.

Nov. 21, 1962.

Rehearings Denied Dec. 27, 1962.

Abraham E. Freedman, Philadelphia, Pa., Kenneth H. Cail, Savannah, Ga., Freedman, Landy & Lorry, Philadelphia, Pa., for appellant.

Julian C. Sipple, A. Pratt Adams, Jr., Savannah, Ga., Walter X. Connor, New York City, Lawton, O'Donnell & Sipple, Savannah, Ga., Adams, Adams & Brennan, Savannah, Ga., Edward T. Brennan, Savannah, Ga., of counsel, for appellees Esso Shipping Co. and Esso Standard Oil Co.

Before TUTTLE, Chief Judge, BROWN, Circuit Judge, and JOHNSON, District Judge.

JOHN R. BROWN, Circuit Judge.

 This case presents the question as to the appropriate statutory limitation period to be applied in determining laches in an admiralty action brought by a shore worker as a vicarious seaman against a vessel or her owners to recover for maritime injuries caused by negligence or unseaworthiness or both.[1] The

---

1. Esso urges that the appeal is not timely. The decree dismissing the libel was entered July 26, 1961. On September 27, 1961, libelant filed a petition for rehearing. Before the petition for rehearing was determined, libelant filed a Notice of Appeal October 18, 1961. There is no express rule permitting a petition for rehearing in admiralty and no local rule in the Southern District of Georgia. The appellee argues that on the principle of Napier v. Delaware, Lackawanna & Western Railroad Co., 2 Cir., 1955, 223 F.2d 28, the petition for rehearing, like a motion for new trial, suspends the original judgment so that the Notice of Appeal given on October 18, 1961, while the petition remained undetermined was a nullity. See also Phinney v. Houston Oil Field Material Company, 5 Cir., 1958, 252 F.2d 357. Assuming that the principle in Ribaudo v. Citizens National Bank, Orlando, 5 Cir., 1958, 261 F.2d 929, is applicable that the time for appeal begins to run from the date the petition for rehearing is denied and not from the date of the original judgment, the supplemental record reflects that unlike that case, the District Judge here refused to "entertain" the petition for rehearing.

District Court adopted the local state, Georgia, limitation of two years. The Judge rejected the contention that the most appropriate analogy was the three-year period under the Jones Act, 46 U.S.C.A. § 688.[2] Once the Georgia law was chosen, the Court, presumably applying the principles which we have discussed in numerous cases[3] held that the libelant had failed to establish that the delay was excusable, or that no prejudice resulted. We do not reach this problem since we conclude that the Jones Act three-year period should be employed.[4]

For our purposes the claim may be simply stated. The libel was filed on April 8, 1960, against the Shipyard[5] and the vessel owner. The libel alleged that while performing his duties as an employee of a subcontractor then engaged in carrying out certain maintenance or repair work for the Shipyard aboard the SS Esso Scranton on May 23, 1957, the libelant sustained injuries when he slipped "upon some oil and/or grease or other foreign substance." By exceptions the respondents each urged that the libel was barred by laches under the Georgia two-year period. Georgia Code Ann. § 3–1004. These pleadings and supporting affidavits set forth a number of circumstances which cast considerable doubt on the intrinsic merits of this claim. These included the successful prosecution of a Georgia Workmen's Compensation claim for a back injury admittedly occurring ashore about a week prior to the alleged injury here. More significant was the fact that just two months before the filing of the instant suit, the libelant had filed on February 8, 1960, a sworn libel against the owners of another vessel to recover for the very same injuries allegedly occurring under the very same circumstances. This was dismissed on the eve of the filing of the libel naming the SS Esso Scranton. But in the view we take of the case, we do not at this time evaluate either the inferences urged to be drawn, or their significance.

Thus, in its simplest outline, the problem is posed whether in an admiralty third party suit against a vessel owner by one having the judicially recognized status to assert the rights of a seaman, the analogous limitation period should be the local law (two years in Georgia) or the Jones Act (three years).

We find ourselves in substantial agreement with the opinions of Judge Wright now of the Circuit Court of Appeals for the District of Columbia, but written by him while a District Judge in this Circuit. Daniels v. States Marine Corp., E.D.La., 1960, 184 F.Supp. 815, 1961 AMC 1203; and Seals v. States Marine Lines, E.D.La., 1960, 188 F.Supp. 398. In so doing, we reject, of course, the contrary conclusions reached by Judge Hoffman in Dawson v. Fernley & Eger, E.D.Va., 1961, 196 F.Supp. 816, which, in turn, analyzed and then rejected Judge Wright's decisions.

Of course it must be recognized at the outset that this does not displace the doctrine of laches. What and all that is done is that in the place of the local statutory period, there is substituted as the analogous reference guide the Jones Act three-year period. But while this does not eliminate the unavoidable prob-

The formal order expressly stated that "said petition for rehearing is hereby denied and ordered stricken" as not timely filed. The notice of appeal was therefore timely and the appeal is properly before us.

2. This incorporates 45 U.S.C.A. § 56.

3. Vega v. The Malula, 5 Cir., 1961, 291 F.2d 415, 1961 AMC 1698; Delgado v. The Malula, 5 Cir., 1961, 291 F.2d 420, 1961 AMC 1706; McDaniel v. Gulf & South American Steamship Co., 5 Cir., 1955, 228 F.2d 189, 1956 AMC 105; Mo- rales v. Moore-McCormack Lines, 5 Cir., 1953, 208 F.2d 218, 1954 AMC 87; Point Landing, Inc. v. Alabama Drydock and Shipbuilding Co., 5 Cir., 1958, 261 F.2d 861, 1959 AMC 148.

4. Whether laches exists is ordinarily presented when the delay in filing exceeds the analogous statutory limitation period. We do not undertake to determine whether, or under what circumstances, delay short of the statutory period might properly amount to laches.

5. Savannah Machine & Foundry Co.

lems for case-by-case adjudication and, moreover, does not achieve the millennium of certitude in this troublesome amphibious area, we think that adoption of the federal statute is both more workable and sensible. And in this rapidly developing field [6] there is ample basis for adopting this standard at the present time.

Pointing in the direction that it is not too late to make these adaptations is McAllister v. Magnolia Petroleum Co., 1958, 357 U.S. 221, 78 S.Ct. 1201, 2 L.Ed.2d 1272, 1958 AMC 1754. There for a pure, not a *Sieracki*-seaman, the Court held that for an action based on the general maritime law for unseaworthiness when joined in a suit for damages under the Jones Act, the applicable reference guide for laches was the three-year Jones Act period, not the forum state statute. Obviously there are many distinguishing factors. That case is not our case. Thus, it is possible to read that case as a solution to a specific narrow problem generated by the impact of res judicata under Baltimore Steamship Co. v. Phillips, 1927, 274 U.S. 316, 47 S.Ct. 600, 71 L.Ed. 1069, 1927 AMC 946. Admittedly we do not have that problem here. But we think McAllister stands for more than that. It affirms that in giving effectual enforcement to court-created principles bearing upon enforcement of court-created rights, there can be alteration and adaption through court decision as occasion demands.

 In this respect one thing is very, very, clear: local law is now completely irrelevant to substantive rights concerning a maritime injury at least short of death.[7] The standing of a transitory shore-based worker as a vicarious seaman and the nature of the duty owed are established as federal maritime law. Seas Shipping Co. v. Sieracki, 1946, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099, 1946 AMC 698. So much so is this that contributory negligence and similar defenses which would bar all recovery had the identical occurrence taken place a few feet away on the dock are rejected in favor of the maritime notion of comparative fault.[8] Pope & Talbot, Inc. v. Hawn, 1953, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143, 1953 AMC 1314. And now, whether the case is in the federal court on the law side or the admiralty side or in a state court, federal maritime standards are solely controlling. "Whatever doubt may once have existed on that score was effectively laid to rest by Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 410–411, 74 S.Ct. 202, 98 L.Ed. 143." Kermarec v. Compagnie Generale Transatlantique, 1959, 358 U.S. 625, 628, 79 S.Ct. 406, 3 L.Ed.2d 550, 1959 AMC 597.

What is left for local law? There is nothing left save an occasional use as a reference guide in determining whether the maritime principle of laches bars the suit. And even here it is wholly fortuitous depending on where the suit is brought—whether in the state in which the accident occurred, or elsewhere—and on the choice-of-law rules, statutory or judge-made, of the forum state. As we have said, certitude and ease in the adjudication of claims for injury to workers in this ambiguous, amphibious area is too much to hope for. But the continued reliance as a matter of judge made

---

6. See, Baer, At Sea With The United States Supreme Court, 38 N.C.L.Rev. 307 (1960); Currie, Federalism and Admiralty, The Devil's Own Mess, 1960, The Supreme Court Review 158.

7. As to death cases the sea is murky. See, Thibodeaux v. J. Ray McDermott & Co., 5 Cir., 1960, 276 F.2d 42, see note 6 at 47, 1961 AMC 1469, and also Emerson v. Holloway Concrete Products Co., Inc., 5 Cir., 1960, 282 F.2d 271, 1961 AMC 1923 at notes 9, 10, 11, p. 281. (dissenting opinion).

8. This perhaps even represented an importation from the Jones Act's standard of comparative fault since the admiralty rule of mutual fault, at least at that date, called only for a 50/50 split. Cf. Halcyon Lines v. Haenn Ship Ceiling & Refitting Corp., 1952, 342 U.S. 282, 72 S.Ct. 277, 96 L.Ed. 318, 1952 AMC 1, and see Southport Transit Co. v. Avondale Marine Ways, Inc., 5 Cir., 1956, 234 F.2d 947, notes 2 and 3, p. 949 and p. 951, 1956 AMC 1498.

law on local statute of limitations as the reference guide does more than create administrative problems of great difficulty. In an area now clearly one for federal supremacy in substantive rights, it produces variable results depending upon the wholly fortuitous, but otherwise irrelevant, local limitation statute.[9] This is itself to impede that essential uniformity of the admiralty which is at the heart of all of this troublesome litigation.

■■ Of course, the *Sieracki*-seaman is not a real full-fledged seaman for all purposes. He has, for example, no claim for the traditional right to maintenance, wages and cure. But the law reasons that in doing the work essentially that of a seaman who is a regular crew member, such vicarious seamen are entitled to comparable, if not identical, protection and sanctions.[10] In that approach, it is a mistake to assume, as the respondents argue, that the enactment in 1927 of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq., erased the broad principles expressed in International Stevedoring Co. v. Haverty, 1926, 272 U.S. 50, 47 S.Ct. 19, 71 L.Ed. 147, 1926 AMC 1638. Indeed, Sieracki declared that such a " * * * view cannot be accepted," 328 U.S. 85, 101, 66 S.Ct. 872, 90 L.Ed. 1099.

Since the District Court used the Georgia two-year period as the guideline, and we now hold that for this type of case, the Jones Act three-year period is to be used by analogy, the cause must be reversed and remanded for further and other consistent proceedings.

Reversed and remanded.

9. This is illustrated by the limitation periods in the six maritime states comprising this Circuit. They run all the way from Louisiana's one-year prescription on the right, Louisiana Stat.Ann. —— Civil Code art. 3536, to six years in Mississippi, Mississippi Rev.Code § 722 (1942).

Complications and opportunities for judge-made hardship are multiplied by the fact that several principal waterways constitute the boundary line between states. And to this must now be added the problems from offshore operations in areas in or short of the outer continental shelf and the projected state lines asserted by contiguous states. See Guess v. Read, 5 Cir., 1961, 290 F.2d 622, 1961 AMC 1413; Pure Oil Co. v. Snipes, 5 Cir., 1961, 293 F.2d 60, 1961 AMC 1651.

10. We do not at this time determine whether libelant has this vicarious seaman's status.