The **FIDELITY & CASUALTY COMPANY OF NEW YORK, Appellant,**

v.

**C/B MR. KIM, Its Engines, etc., et al., Appellees.**

**No. 21263.**

United States Court of Appeals Fifth Circuit.

May 14, 1965.

W. K. Christovich, J. Walter Ward, Jr., New Orleans, La., for The Fidelity and Cas. Co. of New York, Christovich & Kearney, New Orleans, La., of counsel.

John Poitevent, New Orleans, La., for Norman Guidry, owner of the C/B "Mr. Kim", Phelps, Dunbar, Marks, Claverie & Sims, New Orleans, La., of counsel.

Before JONES and BROWN, Circuit Judges, and SHEEHY, District Judge.

JOHN R. BROWN, Circuit Judge:

If not a new wrinkle, Mike Hooks, Inc. v. Pena, 5 Cir., 1963, 313 F.2d 696, this case presents at least a new ripple on the undulating sea of law dealing with maritime rights growing out of the application of state workmen's compensation statutes to a worker sustaining a maritime injury. The precise question is whether a compensation insurer, as a Louisiana statutory subrogee, seeking reimbursement from a vessel and its owner as tortious third parties may maintain a libel filed after the expiration of the state prescriptive period in which suit could be filed by the injured employee. The District Court, on motion for summary judgment holding in the negative, dismissed the libel. We disagree and reverse.

The facts for our purposes, neither complex nor conflicting, are simple.

The Insurer [1] was the Louisiana Workman's Compensation insurer of the Employer [2] for whom the Employee [3] was working as a floorman on a drilling rig

---

1. The Fidelity & Casualty Company of New York.

2. Rowan Drilling Company.

3. Roy F. Powell.

located in Louisiana maritime waters. The injury occurred on April 4, 1961, when the crewboat MR. KIM hit a stump while navigating in broad daylight the calm waters of Grand Lake some 2,000 feet from a boat landing. The vessel was engaged in transporting Powell and fellow drilling rig crew members. Powell's injuries were apparently severe. Although the libel [4] was not filed until May 20, 1963—about ten months after the Louisiana one-year prescriptive period [5]—the vessel owner through authorized representatives within a very short time of the incident knew of the occurrence and the Insurer's claim for reimbursement of compensation benefits paid and payable.

Not later than January 11, 1962—just four months after the incident—the Insurer made formal letter demand on the vessel owner asserting that "the accident was the direct result of a negligent operation of Guidry's crewboat 'Mr. Kim' ". To this demand the present proctors, representing "the P & I underwriters on the C/B MR. KIM", on January 22 made a safe, if somewhat ambiguous, but perhaps nevertheless traditional response. It first expressed the "wish to deny any liability on behalf of the vessel MR. KIM and/or her owner." But then with wisdom born of long experience plus whatever comfort or protection could be generated by the ubiquitous escape hatch "without prejudice" counsel stated "we are prepared to discuss this matter with you." The letter then requested "copies of the medicals in connection with Roy F. Powell's injury and any statements that you might have." The letter obviously was not a peremptory rejection. It contemplated further negotiation for it concluded, "after reviewing these documents, the merits of the case can be dis-

cussed * * *" always, of course, "without prejudice."

And, of course, the negotiations continued. On February 23, 1962, the Insurer advised the vessel owner's counsel that final settlement discussions could not then be held since it did not know what its total expenditures would be. At the same time, the Insurer furnished counsel with copies of all medical reports. The transmittal letter reiterated that the Insurer "will continue to look to Mr. Guidry's insurance carrier for reimbursement of our expenditures in this case, at such time as we know the exact amounts of" them. On the first anniversary date of the accident, weekly compensation benefits were still being paid. The Insurer kept the vessel owner's counsel advised "as to medical developments and as to when it would be possible to terminate compensation benefits." The lines of communications were open at both ends for during the year prior to the anniversary date, the Insurer received "no less than three" letters from the P & I Carrier's lawyer concerning the claim. Compensation benefits were paid from August 4, 1961 through February 22, 1963. Thereafter, on July 8, 1963, the Insurer paid a further substantial lump sum pursuant to a compromise judgment of the Louisiana State Court under the Compensation Act. LSA–R.S. § 23:-1272.

On this showing, we think the District Court could not properly grant summary judgment. This is so whether based on an Erie [Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188] view of controlling Louisiana law or here the more surefooted view of maritime law.

▉ On either approach, we accept, as we earlier have, American Universal Ins. Co. v. Chauvin, 5 Cir., 1964, 329 F.2d 174, the proposition so vigorously assert-

---

4. The libel is in rem against C/B MR. KIM and in personam against Norman Guidry, owner-operator.

5. Article 3536, LSA–C.C.:
   "The following actions are also prescribed by one year: That for injurious words, whether verbal or written, and that for damages caused by animals, or

resulting from offenses or quasi offenses. * * *"

Article 3537: "The prescription mentioned in the preceding article runs: * * * from the day * * * on which the injurious words, disturbance or damage was sustained."

ed that a Louisiana compensation insurer's right of recoupment is statutory subrogation dependent entirely upon the rights granted in § 23:1101–1103.[6] We do not, therefore, explore the Insurer's right, independent of § 23:1101, to press the claim in its own name as real party at interest as frequently and traditionally allowed in the admiralty.[7]

But to accept this proposition which ties the Insurer to the Employee's rights is not at all the end of it. Under the yet undenied allegations of the libel,[8] the Employee had a whole arsenal of rights—state, federal, maritime and mixed. Under the quaint codal language of Art. 2315[9] the Employee clearly has state rights which, independent of the state watercraft statutes,[10] would be enforceable in the Federal Court on either the civil action or admiralty side, Southport Transit Co. v. Avondale Marine Ways, 5 Cir., 1956, 234 F.2d 947; W. E. Hedger Transp. Corp. v. United Fruit Co., 2 Cir., 1952, 198 F.2d 376, at least insofar as

---

6. LSA–R.S. § 23:1101. "When an injury for which compensation is payable under this Chapter has been sustained under circumstances creating in some person (in this Section referred to as third person) * * * a legal liability to pay damages in respect thereto, the injured employee * * * may claim compensation * * * and the payment * * * of compensation hereunder shall not affect the claim * * * of the injured employee * * * against such third person * * *; and such injured employee * * * may * * * proceed * * * against such third person to recover damages for the injury.

"Any employer having paid or having become obligated to pay compensation * * * may bring suit against such third person to recover any amount which he has paid or become obligated to pay as compensation to any injured employee * * *."

§ 1102. "If either the employee * * * or the employer, brings suit against a third person * * * he shall forthwith notify the other in writing of such fact * * * and such other may intervene as party plaintiff in the suit."

§ 1103 prescribes apportionment of court recoveries from, or settlement with, third persons. The employer-insurer has top priority.

A compensation insurer succeeds to the employer's subrogation rights. See Southern Farm Bureau Cas. Ins. Co. v. Travelers Ins. Co., La.App., 1964, 164 So.2d 609; Anchor Cas. Co. v. Hunt Tool Co., La.App., 1952, 56 So.2d 296.

7. See 2 Benedict, Admiralty § 245; § 230; § 346 Intervention; § 348 (6th Ed. 1940).

8. Besides the claim that the C/B MR. KIM was unseaworthy, the libel alleged the injuries were due to the fault and negligence of the vessel and its owners-

operators because the Master was incompetent and unfamiliar with the area, excessive speed of the vessel, failure of the crew to take evasive action, inadequate lookout, and failure to provide marine supervisor personnel having adequate knowledge of seamanship and the channel location in Grand Lake.

9. LSA–C.C. art. 2315. "Every act whatever of man that causes damage to another, obliges him by whose fault it happened to repair it."

10. LSA–R.S. § 34:801–817, Acts 1938, No. 381. In view of constitutional demands for uniformity of the admiralty, the probable limited application of this statute, at least in state in rem or quasi in rem proceedings, has been recognized. 14 Tulane L.Rev. 451. See also Gilmore & Black, The Law of Admiralty § 1–13; The Hine v. Trevor, 1867, 71 U.S. (4 Wall.) 555, 571, 18 L.Ed. 451; cf. Madruga v. Superior Court of California, 1954, 346 U.S. 556, 560, 74 S.Ct. 298, 98 L.Ed. 290.

It is nevertheless a strong indication of state legislative policy to protect Louisianans, or those in Louisiana, from the consequence of "injury, loss or damage * * * to the person or property" occasioned "by carelessness, neglect or want of skill in the navigation, direction or management of any vessel * * *." § 34:802. This policy is also reflected by LSA–R.S. § 13:3479–3480 prescribing service of process on watercraft owners which, by a process of federal adoption, we upheld for use in the admiralty. S.S. Philippine Jose Abad Santos v. Bannister, 5 Cir., 1964, 335 F.2d 595; Paige v. Shinnihon Kishen, E.D.La., 1962, 206 F. Supp. 871. See also Jurisdiction & Due Process Under Watercraft Statute, 15 La.L.Rev. 832, 1955; Sarpy, The Watercraft Statute and Federal Maritime Jurisdiction, 29 Tulane L.Rev. 111.

they do not reduce maritime rights.[11] His Federal rights were abundant. As a passenger for compensation, the Employee was the direct beneficiary of substantive rights arising from long recognized, exacting duties imposed by the federal maritime law.[12] The Linseed King (Spencer Kellogg & Sons v. Hicks), 1932, 285 U.S. 502, 52 S.Ct. 450, 76 L. Ed. 903. And the injuries having occurred on navigable waters, the Employee had an unquestioned claim under the "settled principle of maritime law that a shipowner owes the duty of exercising reasonable care toward those lawfully aboard the vessel who are not members of the crew." Kermarec v. Compagnie Generale Transatlantique, 1959, 358 U.S. 625, 79 S.Ct. 406, 3 L.Ed.2d 550. And for none of these rights did the Employee have to make himself out a Sieracki-Yaka[13] seaman since unseaworthiness is not, certainly at this stage, needed to make out a case of liability. Nor is it needed if, as later discussed, the doctrine of laches does not bar the claim even though tardily filed. Cf. Flowers v. Savannah Machine & Foundry Co., 5 Cir., 1962, 310 F.2d 135.

■ To all of this, the vessel owner has an Erie reply. The contention is that by the reasoning of Marquette Casualty Co. v. Brown, 1958, 235 La. 245, 103 So.2d 269, §§ 1101–1103 (note 6, supra) incorporate §§ 3536–3537 (note 5, supra) to effectually restrict the Insurer's statutory subrogation to the prescriptive period of one year. But neither for Erie nor for maritime purposes do we read the case that way. True, the Louisiana Supreme Court, expressly rejecting several of its earlier decisions, emphasized that there is "but one cause of action against the tortfeasor for the injuries sustained by the employee" so that prescription starts to run with the employee's injury, not the time the insurer is "hurt." But it did not undertake to hold that if, as to some compensable injury sustained by some employee, the prescriptive period was longer or was not a mandatory bar— e. g., an extraterritorial injury in Texas, laches, etc., there would be no enforceable statutory subrogation beyond one year. And, on this approach, if reading the Compensation Act and the Prescription Statutes together does not serve to extinguish the Employee's claim, certainly the right would not be extinguished on the prescription statute alone. For we have held that Art. 3536 is a procedural restraint which bars the remedy, but does not extinguish the right. Page v. Cameron Iron Works, Inc., 5 Cir., 1958, 259 F. 2d 420, 422. It is also good Louisiana law, so we have held in an opinion written for the Court by Judge Wisdom that the codal "[A]rticle expresses the general rule, supported by ample Louisiana authority, that prescription is procedural and the law of the forum governs." Kozan v. Comstock, 5 Cir., 1959, 270 F.2d 839, 841, 80 A.L.R.2d 310.

■ That being so, the forum here is the Federal District Court in which the equitable doctrine of laches, not prescription, is controlling as to a maritime claim.

■ The inquiry on laches partakes of two parts—(1) the excuse for the delay and (2) prejudice to the pursued. As Judge Friendly's opinion in Larios v. Victory Carriers, Inc., 2 Cir., 1963, 316 F.2d 63, carefully develops, the emphasis is more and more on (2)—prejudice— than on (1). "A weak excuse may suffice if there has been no prejudice; an exceedingly good one might still do even where there has been some." 316 F.2d 63, 67. The delay aspect is extremely

---

11. See Thibodeaux v. J. Ray McDermott & Co., 5 Cir., 1960, 276 F.2d 42, 47 n. 6; Emerson v. Holloway Concrete Products Co., 5 Cir., 1960, 282 F.2d 271, 281 n. 10, 11 (dissenting opinion).

12. Gilmore & Black, Admiralty 21–22 n. 77; 515 n. 95, a maritime lien exists for passenger injuries.

13. Seas Shipping Co. v. Sieracki, 1946, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099; Reed v. S.S. Yaka, 1963, 373 U.S. 410, 83 S.Ct. 1349, 10 L.Ed.2d 448; Strachan Shipping Co. v. Melvin, 5 Cir., 1963, 327 F.2d 83, 90.

relative. For " * * * saying that a plaintiff who has fully cleared each of two hurdles will win is not the same as saying that a plaintiff must fully clear each of two hurdles to win." 316 F.2d 63, 67. And we have recently both phrased the principle in positive terms and have applied it in a most revealing way. "A suit in admiralty," Judge Hutcheson wrote for this Court, "is barred by laches only when there has been both [1] unreasonable delay in the filing of the libel and [2] consequent prejudice to the party against whom suit is brought." [14] Akers v. State Marine Lines, Inc., 5 Cir., 1965, 344 F.2d 217 [April 13, 1965]. Upon considering the record we held that the District Court was correct in concluding that there was no acceptable excuse for the late filing. But the inquiry did not end there. Rather, we declared, "If it can be shown that respondents have suffered no prejudice from the delay, then the unexcused delay alone is not sufficient to cause the libel to be dismissed." 344 F.2d 217 at 220. On examination of the sketchy record the Court then concluded that the showing of no prejudice was sufficient to make a summary judgment of dismissal improper and remanded the case for hearing.

▆▆▆ We need spend little time, therefore, on the excuse for the delay—a delay of not more than ten months at most. The excuse, whether legally acceptable or conclusive, was a good one in fact. The Insurer, keeping its adversary posted on current medical reports, expressed its inability to talk final settlement until the amount or duration of its compensation payments to the Employee became known. Of course, it could have filed a libel for amounts thus far paid. But had the case been shortly thereafter tried, there would be at least doubt whether the Court could either award a money decree of reimbursement or a declaration of liability for future, but yet unknown, payments.[15] Actually, of course, little but the filing of the libel would have occurred. Our administrative duties teach us that in the Eastern District of Louisiana—the nation's busiest, most heavily laden District Court—a trial in ten months would have been a miracle.

▆▆▆ But even assuming that what made horse sense did not legally excuse the delay, this inquiry reveals that so far as yet appears, nothing was lost by the modest delay. The filing of the libel on or before August 4, 1962, would have revealed nothing not then known—the fact of the occurrence and the Insurer's demand for reimbursement from the allegedly negligent vessel and owner. Pure Oil Co. v. Snipes, 5 Cir., 1961, 293 F.2d 60. On the uncontroverted responsive showing by the Insurer,[16] this was no stale, unknown claim striking the vessel owner out of the blue. Rather, it was a fresh claim which the owner and his underwriters regarded seriously enough

14. Bracketed numbers [1] and [2] are inserted for emphasis.

15. See § 23:1101, note 6, supra. The matter is also perhaps complicated in an *in rem* proceeding where the maritime lien, shifted from vessel to release of libel bond, Continental Grain Co. v. Federal Barge Lines, Inc., 5 Cir., 1959, 268 F.2d 240, 242–244, aff'd, 1960, 364 U.S. 19, 80 S.Ct. 1470, 4 L.Ed.2d 1540, is ordinarily measured by rights existing at the time the libel is filed. At this point the vessel owner's stress on the restrictive statutory nature of the subrogation right recognized in American Universal Ins. Co. v. Chauvin, 5 Cir., 1964, 329 F.2d 174, tends to justify, not condemn, delay.

16. Against the bare bones conclusory motion for summary judgment on the ground that the Insurer's " * * * action is time-barred by reason of the fact that the libel was filed more than one year after the date of the * * * injury", the Insurer's sworn factual response satisfied McDaniel v. Gulf and South American S.S. Co., 5 Cir., 1955, 228 F.2d 189, to call on the vessel owner "to come forward with evidence of prejudice." Larios v. Victory Carriers, Inc., supra, 316 F.2d 63, 67. Absolutely nothing is revealed by them as to actions taken by the vessel owner, underwriters or counsel after receipt of the claim. If an investigation was made, the fact thereof is not revealed; if not, no reason is advanced. Nor is there any showing of a loss of evidence or sources of evidence from the 10 months' delay.

to place in the hands of highly skilled, energetic specialists whose awareness of the facts of this sometimes weird "third party" life was revealed by their immediate request for medical reports and witness statements as a prelude to discussions of the claim which took place thereafter.

■ Of course, the vessel owner may have thought—or at least hoped—that failure to file within the analogous one-year period would put an end to the claim without regard to its merits. But attractive as that statute of limitation concept is for one pursued, the gentle "wand of equity," United States v. Maryland Cas. Co., 5 Cir., 1956, 235 F.2d 50, 53, is hardly that gentle. To the contrary, we have recently and many times emphasized:

> "Laches is much more than time. It is time plus prejudicial harm, and the harm is not merely that one loses what he otherwise would have kept, but that delay has subjected him to a disadvantage in asserting and establishing his claimed right or defense." Point Landing, Inc. v. Alabama Dry Dock & Shipbuilding Co., 5 Cir., 1958, 261 F.2d 861, 865.

■ On this record there was neither proof nor finding of prejudice. To the contrary, the facts, such as they were, demonstrated no actual prejudice. The Trial Court, therefore, erred in dismissing the libel for laches. Consequently, the cause must be remanded for further consistent proceedings and for trial on the merits unless the contention of prej-

udice is factually borne out by evidence.[17]

Reversed and remanded.

JONES, Circuit Judge, concurs in the result.

---

17. Prejudice is, or certainly may be, inexorably bound up with the underlying merits of the case. In passing upon the vessel owner's factual support for its claim of prejudice, the Court might be dealing with the very same testimony relevant to liability. A trial Court does not have to pursue any such wasteful two-step process. It may hear both together. This case, with its abortive dismissal, appeal and reversal, proves again the wisdom of the procedure approved in Vega v. The Malula, 5 Cir., 1961, 291 F. 2d 415, 416, which assures a factual, evidential determination of laches which contemporary decisions demonstrate may now seldom be resolved on conclusory papers by mere presumptions, see Czaplicki v. S.S. Hoegh Silvercloud, 1956, 351 U.S. 525, 76 S.Ct. 946, 100 L.Ed. 1387; McConville v. Florida Towing Corp., 5 Cir., 1963, 321 F.2d 162, 165–168 (and cases there cited) ; cf. Gutierrez v. Waterman Steamship Corp., 1963, 373 U.S. 206, 83 S.Ct. 1185, 10 L.Ed.2d 297.