Gaines Ted HUSON, Plaintiff-Appellant,

v.

CHEVRON OIL COMPANY, Defendant-Appellee,

v.

OTIS ENGINEERING CORPORATION et al., Third-Party Defendant.

No. 28448.

United States Court of Appeals, Fifth Circuit.

July 14, 1970.

Rehearing Denied Aug. 10, 1970.

Samuel C. Gainsburgh, New Orleans, La., for appellant.

Lloyd C. Melancon, New Orleans, La., for Chevron.

Blake West, New Orleans, La., for Otis.

Leonard Fuhrer, Alexandria, La., amicus curiae.

Before JOHN R. BROWN, Chief Judge, AINSWORTH and GODBOLD, Circuit Judges.

JOHN R. BROWN, Chief Judge:

This case is a fallout from *Rodrigue* [1] and the Outer Continental Shelf Lands Act. 43 U.S.C.A. § 1331 et seq. As a decision whose major thread in the quest for divination of legislative pur-

1. Rodrigue v. Aetna Casualty & Surety Co., 1969, 395 U.S. 352, 89 S.Ct. 1835, 23 L.Ed.2d 360, A.M.C.

pose was a conviction that Congress thought the interests of workers on the Outer Continental Shelf would be served best by adopting the law of the adjacent state as controlling federal law, the ink was scarcely dry when it became evident that the result might be quite something else. For against ingrained maritime principles of comparative fault, laches and the like, the Bar of Louisiana soon had to reckon with local restrictive, sometimes prohibitive, principles of contributory negligence as a complete bar, peremptory limitations of short duration in death actions that extinguished the right,[2] prescriptive limitations of short duration in non-fatal injuries, and the peculiar vicarious substituted employer liability of the workmen's compensation statute that virtually extinguishes the now-common third party *Sieracki-Ryan-Yaka* seamen's suit.[3] Any results so foreign to the *Rodrigue* declared statutory purpose of improving the lot of adjacent-shore based workers should certainly be avoided unless the tide is overwhelming.

The problem here is not academic, but acute, for a case timely brought in January, 1968 was held by the District Court to be Louisiana time-barred by reason of the subsequent 1969 decision in *Rodrigue*. As in Continental Oil Co. v. London Steam-Ship Own. Mut. Ins. Ass'n,[4] we decline to let literalisms produce unsound results. We reverse.

On December 17, 1965 Appellant Huson, while employed by the Otis Engineering Corporation, a service contractor, suffered injuries on a fixed oil rig platform in the Outer Continental Shelf off the coast of Louisiana. On January 4, 1968, he instituted this third party damage action against Appellee Chevron Oil Company, the owner and operator of the fixed structure. The suit was timely commenced, for in *Snipes*[5] we concluded as part of a sweeping declaration, that for the Outer Continental Shelf,

---

2. See Mejia v. United States, 5 Cir., 1946, 152 F.2d 686, 1946 A.M.C. 967; Kenney v. Trinidad Corp., 5 Cir., 1965, 349 F.2d 832, 1965 A.M.C. 1659, cert. denied, 1966, 382 U.S. 1030, 86 S.Ct. 652, 15 L.Ed.2d 542, A.M.C.

   Although part of these problems may be ameliorated or eliminated by Moragne v. States Marine Lines, Inc., 1970, 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339, if the death is "maritime", there are problems remaining when we deal with a *Rodrigue* non-maritime death on a fixed platform.

3. See Gorsalitz v. Olin Mathieson Chemical Corp., 5 Cir., 1970, 429 F.2d 1033. Also of recent vintage on the subject of an activity's being part of an employer's trade or business are Cole v. Chevron Chem. Co., 5 Cir., 1970, 427 F.2d 390 and Arnold v. Shell Oil Co., 1969, 5 Cir., 419 F.2d 43, which interpret LSA–R.S. 23 :1061.

   "Where any person (in this section referred to as principal) undertakes to execute any work, which is a part of his trade, business, or occupation or which he had contracted to perform, and contracts with any person (in this section referred to as contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him; and where compensation is claimed from, or proceedings are taken against, the principal, then, in the application of this Chapter reference to the principal shall be substituted for reference to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the employee under the employer by whom he is immediately employed.

   "Where the principal is liable to pay compensation under this Section, he shall be entitled to indemnity from any person who independently of this Section would have been liable to pay compensation to the employee or his dependent, and shall have a cause of action therefor."

4. Continental Oil Co. v. London Steam-Ship Owners' Mut. Ins. Ass'n, 5 Cir., 1969, 417 F.2d 1030, A.M.C., cert. denied, 1970, 397 U.S. 911, 90 S.Ct. 911, 25 L.Ed. 2d 92, A.M.C.

5. Pure Oil Co. v. Snipes, 5 Cir., 1961, 293 F.2d 60, 1961 A.M.C. 1651.

Congress had mandated [6] federal maritime, not adjacent Louisiana parochial law. Thus the one year time limitation of Louisiana Art. 3536 [7] would not bar a suit [8] for platform-based injuries if the claim passed muster under the maritime doctrine of laches. 293 F.2d at 70.

But all that is water over the dam because for platform-based occurrences,[9] *Rodrigue* rejects maritime [10]

6. Section 1333 provides:

"(a) (1) The Constitution and laws and civil and political jurisdiction of the United States are extended to the subsoil and seabed of the outer Continental Shelf *and to* all artificial islands and fixed structures which may be erected thereon for the purpose of exploring for, developing, removing, and transporting resources therefrom, to the same extent as if the outer Continental Shelf were an area of exclusive Federal jurisdiction located within a State.

(2) To the extent that they are applicable and not inconsistent with this subchapter or with other Federal laws and regulations of the Secretary now in effect or hereafter adopted, the civil and criminal laws of each adjacent State as of August 7, 1953 are declared to be the law of the United States for that portion of the subsoil and seabed of the outer Continental Shelf, and artificial islands and fixed structures erected thereon, which would be within the area of the State if its boundaries were extended seaward to the outer margin of the outer Continental Shelf, and the *President shall determine and publish in* the Federal Register such projected lines extending seaward and defining each such area. All of such applicable laws shall be administered and enforced by the appropriate officers and courts of the United States. State taxation laws shall not apply to the outer Continental Shelf."

43 U.S.C.A. § 1333.

7. Article 3536, LSA–C.C.:

"The following actions are also prescribed by one year: That for injurious words, whether verbal or written, and that for damages caused by animals, or resulting from offenses or quasi offenses. * * * "

See also Article 3537:

"The prescription mentioned in the preceding article runs: * * * from the day * * * on which the injurious words, disturbance or damage was sustained."

8. On the maritime law approach our treatment of Art. 3536 was an *arguendo* assumption.

" * * * For if the occurrence is governed by Louisiana law, it is *conceded* that a suit filed 22 months after the injury * * * is prescribed by the Louisiana one-year statute. LSA C.C. Art. 3536. * * * " (Emphasis added.)

293 F.2d 60, 62. Cited in brief of Amicus, p. 3.

9. Apparently disregarded in *Dore* (also disposed of in *Rodrigue*) was that the death was a maritime tort since the substance of decedent's injuries was consummated on the floating barge. See stipulation of parties in this Court's opinion:

"That the decedent was a crane operator working on a crane on a pedestal on a stationary platform; That the crane was being used to unload a barge or vessel located immediately next to the stationary platform; That while a load was being lifted from the vessel with an intention to place it on the stationary platform, the crane toppeled over with the decedent in the crane and fell to the barge or vessel below, which was being unloaded and the decedent was killed when he fell on the barge."

Dore v. Link Belt Co., 1968, 5 Cir., 391 F.2d 671, 673, note 4.

See also T. Smith & Sons v. Taylor, 1928, 276 U.S. 179, 48 S.Ct. 228, 72 L.Ed. 520, 1928 A.M.C. 447; L'Hote v. Crowell, 1932, 286 U.S. 528, 52 S.Ct. 499, 76 L. Ed. 1270, 1932 A.M.C. 1450.

10. For precedential buoyancy *Snipes, supra,* is probably way below her Plimsoll marks even though the Court's reference is an oblique footnote "cf" in note 9, 395 U.S. 363, 89 S.Ct. 1841, 23 L.Ed.2d 368.

It may be ironic, however, that in this third party situation of a suit by the employee of an independent service contractor against the owner-operator of the fixed platform rig, the rights *vis-a-vis* employee *and* employer (Otis) are fixed, *not by* the Louisiana Compensation Act, but by the Longshoremen's and Harbor Workers' Act 33 U.S.C.A. § 901 et seq. See 43 U.S. C.A. § 1333(c). This includes specifically the provisions relating to third party suits, 33 U.S.C.A. § 933, whch are quite different from those under LSA–R.S. 23:1101 (See note 6, Fidelity & Casualty Co. of New York v. C/B Mr. Kim, 5 Cir., 1965, 345 F.2d 45, 49, 1965 A.M.C. 1944) which ties third party subrogation recovery to the employee's rights, unlike the broader basis under the Longshoremen's Act, see, e. g., Federal Marine Terminals,

in favor of local, adjacent "applicable and not inconsistent" law. "In light of the principles of traditional admiralty law, the Seas Act, and the Lands Act, we hold that petitioners' remedy is under the Lands Act and Louisiana law. The Lands Act makes it clear that federal law, supplemented by state law of the adjacent State, is to be applied to these artificial islands as though they were federal enclaves in an upland State. This approach was deliberately taken in lieu of treating the structures as vessels, to which admiralty law supplemented by the law of the jurisdiction of the vessel's owner would apply. The Hamilton, 207 U.S. 398, 28 S.Ct. 133, 52 L.Ed. 264 (1907). This was done in part because men working on these islands are closely tied to the adjacent State, to which they often commute and on which their families live, unlike transitory seamen to whom a more generalized admiralty law is appropriate. Since the Seas Act does not apply of its own force under admiralty principles, and since the Lands Act deliberately eschewed the application of admiralty principles to these novel structures, Louisiana law is not ousted by the Seas Act, and under the Lands Act it is made

applicable." *Rodrigue, supra,* 395 U.S. at 355, 89 S.Ct. at 1837, 23 L.Ed.2d at 364.

Several theories are advanced in refutation of the District Court's holding. Huson urges that on usual principles *Rodrigue* should be applied prospectively and not retroactively. The Amicus contends that Art. 3536 is purely procedural, not a part of the substantive right, so that the federal forum is not bound by it. On argument, we suggested the *Continental Oil* approach, that with federal resources being adequate the Louisiana law (Art. 3536) was not needed and hence was not "applicable". Persuasive as is the equitable appeal of non-retroactivity,[11] we prefer to rest reversal on the other grounds.

■ In assaying Art. 3536, (note 7, *supra*) we emphasize two important factors. The first is the role of the federal Trial Court in an Outer Continental Shelf case. It is most certainly not just an *Erie* Court of the state in which it sits. Rather, it is the Court to which Congress committed primary, if not exclusive, jurisdiction for the enforcement of all federal laws including those adopted from the adjacent state.[12] It is a

Inc. v. Burnside Shipping Co., 1969, 394 U.S. 404, 89 S.Ct. 1144, 22 L.Ed.2d 371, A.M.C. Apportionment of the burden of litigation and distribution of recoveries may also be different. See, e. g., Strachan Shipping Co. v. Melvin, 1964, 5 Cir., 327 F.2d 83, 1964 A.M.C. 288 (dissenting opinion) ; Haynes v. Rederi A/S Aladdin, 1966, 5 Cir., 362 F.2d 345, 350–351, A.M.C., cert. denied, 1967, 385 U.S. 1020, 87 S.Ct. 731, 17 L.Ed.2d 557. Likewise, in the so-called Louisiana law third party suit the real "substantive" standards of conduct, performance, negligence, etc. will to a great extent be "federal" because of mandated Coast Guard Safety Regulations (43 U.S.C.A. § 1333(e) (1)) which have the force of federal law. See, e. g., Manning v. M/V "Sea Road," 1969, 5 Cir., 417 F.2d 603, 1969 A.M.C.

11. Application is most frequent in constitutional cases, not only criminal, see Linkletter v. Walker, 1965, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 and United States v. Lucia., 5 Cir., 1969, 416 F.2d

920, aff'd en banc, 1970, 423 F.2d 697; but civil as well. See Cipriano v. City of Houma, 1969, 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647 :
"Where a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of non-retroactivity." 395 U.S. at 706, 89 S. Ct. at 1900, 23 L.Ed.2d at 652.
*Cf.* Miller v. Amusement Enterprises, Inc., 5 Cir., 1970, 426 F.2d 534.

12. See § 1333(b) :
"Jurisdiction of United States district courts
(b) The United States district courts shall have original jurisdiction of cases and controversies arising out of or in connection with any operations conducted on the outer Continental Shelf for the purpose of exploring for, developing, removing or transporting by pipeline the natural resources, or involving rights to the natural resources of

federal Court adjudicating a federal case controlled by direct or adoptive federal law.

■ Second, we recognize that *Rodrigue*-Louisiana substantive right begins with "the quaint codal language of Art. 2315" [13] *C/B Mr. Kim, supra*. But unlike death actions for which Art. 2315 prescribes both the right and time, non-death rights created by Art. 2315 find their time restrictions in Art. 3536. Whether it is this verbal contiguity versus verbal separatism which leads to the result, it is nevertheless unquestioned Louisiana jurisprudence that for death actions the time is an integral part of the right. *Mejia, Kenney, supra* note 2.

■ But not so for Art. 3536. "For we have held that Art. 3536 is a procedural restraint which bars the remedy, but does not extinguish the right. Page v. Cameron Iron Works, Inc., 5 Cir., 1958, 259 F.2d 420, 422. It is also good Louisiana law, so we have held in an opinion written for the Court by Judge Wisdom that the codal '[A]rticle expresses the general rule, supported by ample Louisiana authority, that prescription is procedural and the law of the forum governs.' Kozan v. Comstock, 5 Cir., 1959, 270 F.2d 839, 841, 80 A.L. R.2d 310." *C/B Mr. Kim, supra*, 345 F. 2d at 50.

In keeping with accepted conflicts principles "purely procedural provisions may be overlooked". *Kenney, supra*, 349 F.2d at 836. In Levinson v. Deupree, 1953, 345 U.S. 648, 73 S.Ct. 914, 97 L. Ed. 1319, dealing with a claim in a federal Court in which state law was said to be applicable, the Supreme Court asserted that the federal Court must look to the local law to determine the scope of the rights. But the Court was not bound to go beyond that "to strive for uniformity of results in procedural niceties with the courts of jurisdiction which originated the obligato." 345 U. S. at 651, 73 S.Ct. at 916, 97 L.Ed. at 1324.

This carries out the legislative aim of (i) a body of substantive law (ii) to be administered by federal Courts as federal law. State law is called on as "applicable" where it is necessary to "fill federal voids" and where state law "supplemented gaps in the federal law". Where there is a federal "law" or procedural practice which adequately "cope[s] with the full range of potential legal problems" [14] the state law—here prescription—is not applicable, for "the deliberate choice of federal law, federally administered, requires that 'applicable' be read in terms of necessity—necessity to fill a significant void or gap." *Continental Oil, supra*, 417 F.2d at 1036.

---

the subsoil and seabed of the outer Continental Shelf, and proceedings with respect to any such case or controversy may be instituted in the judicial district in which any defendant resides or may be found, or in the judicial district of the adjacent State nearest the place where the cause of action arose."

And see § 1333(a) (2), supra note 6 which concludes:

"All of such applicable laws shall be administered and enforced by the appropriate officers and courts of the United States. State taxation laws shall not apply to the outer Continental Shelf."

This was a deliberate choice in rejecting the Amendment proposed by Senator Long of Louisiana "which would have made 'the laws of each state applicable to the newly acquired area, and * * * the officials of such State [the agents em-

powered] to enforce the laws of the State in the newly acquired area.'" 395 U.S. at 359, 89 S.Ct. at 1839, 23 L.Ed.2d at 366.

13. LSA–C.C. art. 2315.

"Every act whatever of man that causes damage to another, obliges him by whose fault it happened to repair it."

* * * * * *

"The right to recover all other damages caused by an offense or quasi offense, if the injured person dies, shall survive for a period of one year from the death of the deceased * * *."

See Grigsby v. Coastal Marine Service of Texas, Inc., 5 Cir., 1969, 412 F.2d 1011, 1023–1029.

14. *Rodrigue, supra*, 395 U.S. 357, 358, 89 S.Ct. at 1838, 23 L.Ed.2d at 365.

Here in rejecting the Louisiana period of limitations we recognize a federal Court in many situations applies the limitations period of the forum state when it acts as a "state" Court in an *Erie* sense. For this proposition Chevron cites Wells v. Simonds Abrasive Co., 1953, 345 U.S. 514, 73 S.Ct. 856, 97 L. Ed. 1211; Martin v. Texaco, Inc., 1968, E.D.La., 279 F.Supp. 1015, *inter alia.* And we recognize also that when applying a federal statute, if that statute does not itself set out a limitation period, we often adopt the periods of the states.

In O'Sullivan v. Felix, 1913, 233 U.S. 318, 34 S.Ct. 596, 58 L.Ed. 980, the Supreme Court set the stage by noting "That the action depends upon or arises under the laws of the United States does not preclude the application of the statute of limitations of the state is established beyond controversy * * *." This Court has applied this approach quite frequently in cases arising under the Civil Rights Act in which a federal Court borrows the applicable statute of limitations from the state in which it sits. McGuire v. Baker, 5 Cir., 1970, 421 F.2d 895. See also Beard v. Stephens, 5 Cir., 1967, 372 F.2d 685.

Yet the state limitations have been rejected when a significant federal interest made them inappropriate. Never has this been more evident than in the maritime and quasi maritime area which is traditionally imbued with the laches doctrine and which presents a strong federal urge toward uniformity.

Of course there can be no doubt about the procedural resources of the federal Court. Thus, we rejected the state statute of limitations for the doctrine of laches on the analogy of Jones Act limitations, in Flowers v. Savannah Machine & Foundry, Co., 5 Cir., 1962, 310 F.2d 135, 1962 A.M.C. 2537; and the Supreme Court's adoption of the Jones Act period for federally recognized recovery for unseaworthiness. McAllister v. Magnolia Petroleum Co., 1958, 357 U.S. 221, 78 S.Ct. 1201, 2 L.Ed.2d 1272, 1958 A.M.C. 1754. To make certain that platform workers would not have fewer rights than their counterparts ashore, Congress sacrificed some uniformity. But consistent with that objective this broad legislative aim is served by eliminating disparities having nothing to do with substantive obligations but arising from the sheer accident of geographical location in, on, over or around the high seas. 43 U.S.C.A. § 1333(b); Atlantis Development Corp. v. United States, 5 Cir., 1967, 379 F.2d 818.[15] Indeed, " * * * In actions arising at sea, frequently beyond the territorial bounds of any State, normal choices-of-law doctrines are likely to prove inadequate to the task of supplying certainty and predictability," *McAllister, supra,* 357 U.S. at 230, 78 S.Ct. at 1207, 2 L.Ed.2d at 1279 (Brennan, J. concurring) for in the Fifth Circuit alone state statutes of limitations range from one year in Louisiana to six years in Mississippi.[16]

We therefore reject Art. 3536 as a bar in this or similar cases. The doctrine of laches applies. Here, there being no question of adequate actual notice, complete lack of any prejudice, and a forthright failure to urge laches, Delgado v. The Malula, 5 Cir., 1961, 291 F. 2d 420, 1961 A.M.C. 1706, the suit was timely filed.

Reversed and remanded.

---

15. By rejecting state law here, we consider the real "interests sought to be served in the domestic intramural contest over the oil rich tidelands without disturbing interests of an international character having equal, if not greater importance in a day in which an incident on the High Seas may trigger a fissioned Armageddon." *Continental Oil, supra,* 417 F.2d at 1037.

16. "However, slavish absorption of state limitations rules will certainly not achieve federal uniformity when we consider that, in the Fifth Circuit-Gulf Coast area alone, this would mean, injured offshore of Mississippi, the litigant would have six years to file suit; off-shore of Texas, two years; Alabama, one year in injury cases and two years in death cases; Florida, four years in injury cases and two years in death cases."

Brief of Amicus, p. 12.