**Louis LA LANDE**

v.

**GULF OIL CORPORATION, Reading & Bates Offshore Drilling Company, and the Travelers Insurance Co.**

**Civ. A. No. 14034.**

United States District Court,
W. D. Louisiana,
Lafayette Division.

Sept. 25, 1970.

Mouton, Beard, Plaisance, & Franques, Howard L. Franques, Jr., Lafayette, La., and Chester Eggleston, New Orleans, La., for plaintiff.

Phelps, Dunbar, Marks, Claverie & Sims, Harry S. Redmon, Jr., New Orleans, La., for Gulf Oil and Offshore Drilling.

Bean & Rush, Warren D. Rush, Lafayette, La., for Stooksberry Tank.

Pugh & Boudreaux, Charles J. Boudreaux, Lafayette, La., for Travelers Ins. Co.

PUTNAM, District Judge.

This suit is an action by Louis LaLande for damages brought against Gulf Oil Corporation (hereafter Gulf), Reading and Bates Offshore Drilling Company (hereafter Reading and Bates), and The Travelers Insurance Company (hereafter Travelers) for negligence and unseaworthiness. The defendants filed a motion for summary judgment and/or dismissal on the grounds that the claim was barred by prescription, and alternatively by laches, which motion was set for argument on a regular motion day of the court, and thereafter referred to trial on the issues raised by the motion. After considering all the evidence and the briefs of counsel, the court rendered judgment in favor of defendants and against the plaintiff, dismissing the suit at plaintiff's costs. In connection with the judgment thus entered, the court makes the following:

## FINDINGS OF FACT

1. Plaintiff, Louis LaLande, is a person of the full age of majority and a resident of Breaux Bridge, Lousiana. At all times pertinent, plaintiff was employed by Stooksberry Tank Company as a well tester.

2. Defendant, Gulf, was the owner of a stationary drilling platform located in Block 130, South Timbalier Area, Gulf of Mexico, which platform was on the outer continental shelf.

3. Defendant, Reading and Bates, was the owner and operator of the tender J. W. Bates which was moored adjacent to the aforesaid platform owned by Gulf.

4. Defendant, Travelers, was the liability insurer of Gulf.

5. On September 24, 1963, Reading and Bates was drilling an oil well for Gulf using Gulf's platform. In connection therewith, Gulf contracted with plaintiff's employer, Stooksberry Tank Company, to do certain testing.

6. Gulf's platform was a stationary drilling platform which rested on the ocean floor. It was approximately fifty feet wide, one hundred feet long and the working deck or rig floor was approximately seventy feet above the water. Reading and Bates tender, J. W. Bates, was independently moored adjacent to this platform. There was a ramp from the platform to the tender which was raised and lowered by means of a winch on the platform. The ramp was attached to the platform; however, it was not attached to the tender. Ordinarily the end of the ramp remains several feet above the deck of the tender to allow for the rise and fall of the tender in the sea. There were safety railings on either side of the ramp, and the steps of the ramp had a nonskid grating surface. At the end of the ramp, there was a vertical pipe with a member at the top which resembles a "gibbet." A three-quarter inch manila rope, knotted every few feet for gripping purposes, was attached to the end of the gibbet, which was used by personnel to transfer from the ramp to the tender to either lower themselves to the tender or to steady themselves as they stepped from the ramp to the tender, depending on the height of the ramp above the deck of the tender which in turn was dictated by the height of the sea.

7. The trial of this case was held on June 16, 1970. At the trial, seven witnesses in addition to the plaintiff testified.

8. Plaintiff's accident, which is the basis of this suit, occurred on September 24, 1963; however, the complaint was not served on Gulf and Reading and Bates until August 30, 1968, over four years and eleven months after the accident occurred. The complaint was later amended to include Travelers. Plaintiff's sole excuse for the long delay in filing suit was that he was allegedly ignorant of his rights.

9. According to the plaintiff, he was injured when he fell to the deck of the tender J. W. Bates as a result of slipping or losing his grip while descending the rope as heretofore described. Plaintiff did not know what caused him to fall, nor did he know the identity of any of the witnesses to his fall.

10. Plaintiff consulted an attorney within a year after the accident concerning his rights; however, he failed to ask that attorney to advise him.

11. In the period between the date of the accident and the time suit was filed, plaintiff saw no less than seven doctors, one of whom was consulted at least 45 times prior to suit being filed. Plaintiff was treated for many and varied ailments.

12. In addition to himself, plaintiff's witnesses included Mr. Henry Perret and Mr. Leroy Chaisson, employees of Travelers. Perret and Chaisson testified that Travelers was the compensation insurer of Stooksberry Tank Company; it insured plaintiff under a disability policy and was also the liability insurer of Gulf. Mr. Perret explained that Travelers' office in Lafayette was departmentalized and that he handled direct liability claims which would include the claim against Gulf, and Mr. Chaisson handled compensation claims which included the compensation claim against Stooksberry Tank Company (not included in this litigation). Perret testified that his and Travelers, as insurer of Gulf, first knowledge of the injury to plaintiff was when Travelers received a copy of the complaint in this suit. Mr. Chaisson, who handled the plaintiff's compensation claim for Stooksberry Tank Company, testified that Travelers, as compensation carrier, received immediate notice of the accident but only conducted a cursory investigation to determine that LaLande was injured within the scope of the Longshoremen and Harbor Workers' Compensation Act. No investigation was conducted to determine who, if anybody, was liable.

13. In addition, plaintiff called Mr. Bernard Domingue, his co-employee with Stooksberry Tank Company, who did not witness the accident and had no knowledge concerning the facts of the accident, and Mr. B. R. Collins, an employee of Reading & Bates, who testified that he witnessed an accident involving facts similar to those related by plaintiff, but contradicted plaintiff on many important facts, and further testified that on the date when the accident was alleged to have happened, he was in Alaska. Under the circumstances, due to the passage of time, the court is of the opinion that Collins was confused and vague, and thus his testimony was of little or no value.

14. The defendants called as their first witness Mr. Leonard Collins, Area Administrator of Reading & Bates. Mr. Collins testified that as Area Administrator he had custody of all of Reading & Bates' business records, that he had searched the business records, and that the first notice which Reading & Bates had of plaintiff's accident was when the suit papers were received on August 30, 1968. Mr. Collins further testified that the toolpusher employed by Reading & Bates on the J. W. Bates at the time of plaintiff's injury had in the interim been terminated by Reading & Bates, and that other employees of Reading & Bates on the J. W. Bates at the time of the accident were out of the country, and had been so since the date suit was filed.

15. The next witness to testify was Mr. L. J. Gonzales, Gulf's drilling superintendent on the J. W. Bates, who identified an accident report prepared by him for Gulf on the day of the accident. However, Mr. Gonzales testified that other than to obtain the basic facts of the accident, and the name and personal information from the injured party, no investigation was conducted by him at the time and no investigation was conducted by Gulf until after suit was filed.

16. The third witness was Mr. Henry C. Moity, an investigator employed by defendants' counsel. Mr. Moity testified that he had attempted to interview the Reading & Bates toolpusher who had

been terminated, and the toolpusher advised him that under no circumstances would he discuss the case with Reading & Bates in view of his termination. Mr. Moity also testified concerning his thorough yet futile efforts to contact Mr. Joseph Soileaux, the only other witness listed on Gulf's accident report.

17. Considering all the testimony, the court finds as a matter of fact that the defendants have been seriously prejudiced by plaintiff's failure to file suit until August 30, 1968, four years and eleven months after the alleged accident occurred, because of their inability to locate certain witnesses, because other witnesses have now forgotten important facts, and also because of the extensive, complicated, and confusing medical treatment administered the plaintiff, over which they had no control.

### CONCLUSIONS OF LAW

1. This court has jurisdiction of the cause under 28 U.S.C. § 1332, and the Outer Continental Lands Act, 43 U.S.C. A. § 1331 et seq., and venue is properly laid in the Western District of Louisiana.

2. Plaintiff was injured when he fell while descending a rope attached to a fixed platform in the Gulf of Mexico. In Rodrigue v. Aetna Casualty and Surety Company, et al., 395 U.S. 352, 89 S. Ct. 1835, 23 L.Ed.2d 360 (1969), the United States Supreme Court held that under the Outer Continental Shelf Lands Act, 43 U.S.C.A. § 1333(a) (2), the law to be applied on a fixed platform located on the outer continental shelf, in the absence of federal law, was the law of the adjacent state, or as in this case, the law of Louisiana.

3. In Bible v. Chevron Oil Company, 308 F.Supp. 312 (E.D.La.1969), the Court held that where a welder's helper on a fixed platform in the Gulf of Mexico was knocked from the platform into the Gulf of Mexico, thereby sustaining injuries, the sole remedy was under Louisiana law. In an exhaustive opinion, Judge Rubin analyzed the various cases and evoked the "place of harmful force on the body" rule. In other words, if a man is knocked from a ship to a dock, the cause of action would be maritime. See The Admiral Peoples, 295 U. S. 649, 55 S.Ct. 885, 79 L.Ed. 1633 (1935). On the other hand, if a man is knocked from a dock into the water, the cause of action would be nonmaritime. See T. Smith & Sons v. Taylor, 276 U.S. 179, 48 S.Ct. 228, 72 L.Ed. 520 (1928).

4. At the time LaLande fell, he was descending a rope which was an appurtenance of and attached to a stationary fixed platform. If a tort occurred, which has not been proved, it had to have happened while plaintiff was on the rope. Following the holding in *Rodrigue*, supra, there was a divergence of opinion as to whether the one-year prescriptive period provided for by Article 3536 of the Revised Civil Code of Louisiana for the year 1870 or the equitable doctrine of laches would apply to actions sounding in tort arising on fixed platforms on the outer continental shelf. In Huson v. Chevron Oil Co., 430 F.2d 27, 5 Cir., the court resolved this question, holding that in cases of bodily injury, such as this, prescription is a procedural matter, not substantive law, and is governed by the law of the forum. Hence, actions ex delicto which do not result in death, arising on fixed platforms located on the shelf, are governed by the maritime doctrine of laches. Cf. Continental Oil Co. v. London Steam-Ship Owners' Mutual Ins. Ass'n, 5 Cir. 1969, 417 F.2d 1030.

5. Prior to the service of the complaint herein, Reading & Bates had no notice of the accident, and Gulf's only notice was a routine accident report which was completed in the ordinary course of business, and no investigation was ever conducted by Gulf as a follow-up to it. Neither Reading & Bates nor Gulf had cause to investigate the facts of this case until suit was filed, since plaintiff admittedly did not put either of them on notice that the filing of a complaint was contemplated or that either of them was allegedly guilty of negli-

gence or of maintaining an unseaworthy vessel. Travelers, which insured both Gulf and Stooksberry, investigated the claim as Stooksberry's compensation insurer merely to determine that plaintiff was due compensation payments. Other than for that reason, no other investigation was conducted by Travelers.

The court finds that the defendants have been seriously prejudiced by the long delay in filing this suit. They have been unable to locate a key witness that might have knowledge of the facts of the accident. There may have been other witnesses but even the plaintiff cannot identify them. The only other eye witness remembers only some of the facts of the accident, and has lapses of memory that are such that he does not remember some of the salient facts. Even if witnesses were present who could testify to the facts of the accident, both Reading & Bates and Gulf have been severely prejudiced because of the long and extensive medical treatment which has been afforded the plaintiff, of which they had no knowledge until the filing of suit, and in which they were not able to participate in connection with the choosing of physicians, etc.

■ 6. There are two elements for a successful plea of laches: (1) delay in seeking a remedy on the part of the plaintiff, and (2) prejudice to the defendants resulting from that delay. Gardner v. Panama Railway Company, 342 U.S. 29, 72 S.Ct. 12, 96 L.Ed. 31 (1951). "Although frequently classified as a separate element, the inexcusability of a delay * * * is closely intertwined with the predominant factor of detriment or lack of detriment." Molnar v. Gulf-Coast Transit Company (CCA 5, 1967), 371 F.2d 639, 642; Fidelity and Casualty Company v. C/B Mr. Kim (CCA 5, 1965) 345 F.2d 45; Akers v. State Marine Lines, Inc. (CCA 5, 1965) 344 F.2d 217; Larios v. Victory Carriers, Inc., (CCA 2, 1963) 316 F.2d 63.

■ 7. In determining when an unreasonable delay in seeking a remedy exists, the Court will look for analogy to the applicable statute of limitations. Gilmore and Black, The Law of Admiralty (1957), p. 628. Considering the *Huson* case, supra, the statute of reference here is the Jones Act, 46 U.S.C.A. § 688, which allows three years for bringing suit. Plaintiff's complaint has come almost two years following the limitation period allowed for a similar claim under the Jones Act. Such reference to the Jones Act provisions is purely for analogy and is not controlling. Crews v. Arundel Corporation, 5 Cir. 1967, 386 F.2d 528. Plaintiff stated the only reason for the delay was that he was ignorant of his rights under the law; this is no excuse. Akers v. State Marine Lines, Inc., supra. "In the absence of extraordinary circumstances excusing delay and negativing prejudice, passage of time beyond the analogous state statute of limitations is presumed to have caused prejudicial detriment" to defendants. Vega v. The Malula (CCA 5, 1961), 291 F.2d 415, 416; McGrath v. Panama Railway Co. (CCA 5, 1924), 298 F. 303; Morales v. Moore-McCormick Lines (CCA 5, 1963), 208 F.2d 218; McMahon v. Pan American World Airways (CCA 5, 1962), 297 F.2d 268. Plaintiff has not suggested that extraordinary circumstances are present in this case and accordingly defendants are entitled to the presumption just described.

■■ 8. There is no question but that after the analogous statute of limitations has run, the burden of proof is on the plaintiff to show that he has an excuse for delay and that the defendants have not been prejudiced. This he has failed to do. Although the burden of proof is on the plaintiff, defendants have clearly shown by a preponderance of the evidence that they have been seriously prejudiced by their inability to adequately investigate the accident and defend the litigation. Under the circumstances, we hold as a matter of law that plaintiff's claim is barred by laches.

9. Defendants are therefore entitled to judgment dismissing this action at plaintiff's cost.